NOONAN, Respondent, *vs.* THE HARTFORD FIRE INSURANCE COMPANY, Appellant.

1. A condition in a fire policy that the insured shall, after a loss, procure the certificate of the nearest magistrate or notary public as to its fairness, is a condition precedent to a recovery, and must be strictly complied with, unless there is either a waiver or an estoppel. A certificate from any other than the nearest officer qualified to act is certainly not a compliance, when the nearest not only does not refuse to act at all in the matter, but actually gives a certificate different from that required.

2. The fact that the company, after receiving a certificate which is not in compliance with the condition in the policy, enters upon an investigation as to the extent of the loss, without immediately objecting to the certificate, and offers to pay a certain amount, is not, as a matter of law, a waiver of their right to demand a strict compliance with the condition, when their proposition is declined.

*Appeal from St. Louis Court of Common Pleas.*

This was an action upon a fire policy for $4400, dated November 3, 1852, upon the stock and fixtures in a queensware

store on Main street, in the city of St. Louis, destroyed by fire on the 7th of February, 1853.

Among other conditions in the policy, was one which is set out in the opinion of the court. It was provided that, in case of loss, the company should not be liable for any greater amount than the proportion which the sum insured by it bore to the whole amount of insurance.

The petition, after setting forth the terms of the policy and the loss, contained a specific averment of a compliance with the condition as to notice and preliminary proofs of loss, and with the condition above referred to, by procuring the certificate of the nearest magistrate, and a general averment of a compliance with all the other conditions in the policy. The plaintiff's loss by the fire was stated in the petition to be $14,500.

The defendant, in its answer, denied that the plaintiff had sustained a loss to the amount claimed, and averred that he had failed to procure from the notary public most contiguous to the place of the fire such a certificate as was required by the conditions of the policy.

Commissioners were appointed to ascertain and report the amount of plaintiff's loss by the fire, who reported his loss on stock at $12,809 77, and on fixtures at $363 24. The cause being afterwards submitted to a jury, upon the other issue, it appeared in evidence that on the next day after the fire, the plaintiff notified the defendant, agent thereof, in writing, and on the 2d of March afterwards, caused to be delivered to him a particular account of his loss, verified by his own affidavit, and accompanied by the certificates of Allen and Vogel, two justices of the peace, dated March 1st, 1853, which, as to their contents, were in compliance with the condition in the policy. There was also delivered, at the same time, a certificate dated February 28, 1853, by William H. Pritchartt, a notary public, and secretary of the board of underwriters (whose office was more contiguous to the place of the fire than that of either of the two justices,) setting forth that he was not in any way concerned in the loss, nor related to the plaintiff; that he had

made due inquiry into the cause and origin of the fire, and had understood that it originated in Noonan's store ; that the general opinion was that it had been fired by an incendiary ; and that he had made inquiry as to the character and circumstances of said Noonan, but had received answers of such a character that he could not arrive at a conclusion as to the fairness or amount of the loss sustained.

The plaintiff's attorney testified that at the time of delivering to the defendant's agent the account of loss, affidavit and certificates, he stated that they were the plaintiff's preliminary proofs, (except the list and appraisement of goods saved, which would be furnished as soon as completed,) and requested the agent to examine them and see if any thing further would be required ; and on the 20th of March, he delivered to the agent a list and appraisement of the goods saved, stating that this completed his preliminary proofs, and again requesting the agent to examine them and see if any thing further would be required.　Some days afterwards, he again called on the agent, and was informed that the company would probably require the plaintiff to submit to an examination under oath, in compliance with a condition in the policy.　On the 31st of May, plaintiff was no ified in writing to submit to an examination by defendant's attorneys on the next day.　This examination was submitted to and lasted for several days.　The plaintiff was required to produce his books and allow them to be examined by Mr. Clark, on behalf of the various companies interested.　Mr. Clark remained in possession of the books several days, and on the 8th of June, informed the plaintiff that he had got through, and was prepared to submit a proposition on behalf of the several companies.　He stated that he made the plaintiff's loss $5474 54, of which sum each of the companies would pay its proper proportion.　This proposition was declined.　Afterwards, other propositions for a compromise passed between the parties, the last of which was made by plaintiff in writing on the 14th of June.　On the 18th of June, the defendant's agent replied, declining plaintiff's offer, and stating that if his

former proposition was not accepted, the company would ex-
pect full compliance with the conditions of the policy, and re-
quire him to produce the certificate of the nearest notary pub-
lic. On the 27th of June, this suit was commenced. The
plaintiff's attorney further testified that, during the negotiation
until it was broken off, the whole difficulty was as to the
amount of the loss.

The following instructions, among others, were given by the
Court of Common Pleas, to which the defendant excepted :

"10. If the jury believe from the evidence that the plaintiff
delivered to the agent of the defendant the notice of the fire
read in evidence, on or about the next day after the fire, and
also delivered to said agent the certificates of Allen, Vogel
and Pritchartt, read in evidence, on or about March 2d, 1853,
and that said certificates were genuine, and said Allen and Vo-
gel were justices of the peace at the time of their date, and
Pritchartt a notary public, and with the same also delivered to
said agent a statement of his loss, sworn to by plaintiff, as
read in evidence ; and afterwards, on or about the 20th day of
March, also delivered to said agent an appraisement of the
goods saved from the fire, made by persons appointed there-
for by both parties, and then declared to said agent that that
completed his preliminary proofs of his loss ; that plaintiff did
said things as and for a compliance with the conditions of the
policy in that behalf, and to the same as done, neither said
agent or defendant made any objections on the ground of their
not complying with such conditions, but after receiving the
same, entered upon an examination of the amount of the loss
and examined the books of the plaintiff therefor, and the plain-
iff himself upon oath, and after this, did, on or about the 8th
day of June, 1853, declare to plaintiff the amount of liabili-
ties of defendant to plaintiff, arrived at from said evidences
and examinations under said policy, by reason of the loss by
said fire, and the same offered to pay to him, then they ought to
find for the plaintiff, and for damages allow him so much of
the sum of $12,809 77, as $4000 bears to $14,000, (the whole

amount of insurance,) with interest from sixty days after the time they should find that plaintiff delivered to defendant said preliminary proofs and certificates, to the present time."

"11. If no objection to the certificates of Pritchartt, Allen and Vogel was made by the defendant until after the offer by the defendant to pay, as stated in the foregoing instruction No. 10, and until after the plaintiff refused to accept the said sum in full payment of defendant's liability to him under said policy; and until after said refusal, defendant never objected to paying the plaintiff the sum claimed, on any other ground than that the amount of his loss was less than claimed by him in his preliminary proofs, then the defendant waived the condition requiring the certificate of the nearest notary or magistrate, and the notice dated June 18th, even if given by the defendant, does not bar the plaintiff's right of recovery."

There was a verdict for the plaintiff for $4257 84, upon which there was a judgment, from which the defendant appealed.

*B. A. Hill*, for appellant. 1. The 10th instruction given is erroneous, for the reason that the facts stated in said instruction do not authorize the court to declare, as a question of law, that the defendant waived the certificate of the notary public most contiguous to the place of fire. The question of waiver is one of fact and intention for the jury upon all the circumstances of the case. (*Phillips* v. *The Protection Insurance Company*, 14 Mo. Rep. 234. *Kyle* v. *The St. Louis Insurance Company*, 11 Mo. Rep. 291. Angell on Life and Fire Insurance, p. 260, § 233. *Edwards* v. *Baltimore Fire Insurance Company*, 3 Gill (Md.) Rep. 176. *Klein* v. *Franklin Insurance Co.*, 1 Harr. (Penn.) Rep. 247.) The 10th instruction *does not embody all the facts* to be passed upon by the jury, in order to find a waiver. The important question as to waiver is, whether the defendant rested its denial of liability on other grounds, and made no objection to any deficiency in the preliminary proofs. (Ang. on Life and Fire Insurance, § 244, p. 265. 6 Harr. & Johns. (Md.)

Rep. 408.) The letter of the 18th of June, 1853, was an important fact to be considered by the jury. (10 Pet. 507. 9 How. 390.) 2. The nearest officer was the only one whose certificate would answer the condition of the policy. (1 Green. 110. 1 Shepley, 265. 2 H. Black. 577. 1 H. Black. 254. 2 Pet. 25. 7 Conn. Rep. 462. 13 Maine, 265. 1 Tenn. Rep. 12. 1 Rall's Abr. 415. 1 Sand. 216. Sayer, 185. 5 Vin. Abr. 207. 1 Tenn. 642. 3 Mass. 443. 14 Mass. 453. 6 Term. Rep. 710. 2 McMullan, 237.) Pritchartt's certificate is not, and does not purport to be a compliance with the condition of the policy.

*Krum & Harding*, for respondent. 1. The law as to *waiver* of preliminary proofs was correctly stated. (2 Phill. on Ins. 485, 493–4. 6 Cow. Rep. 404. 2 Wend. 64. 6 Harr. & Johns. 408. 2 Wash. 61. 1 J. R. 219. 9 J. R. 192. 20 Pick. 389. 3 Sand. 26. 3 Cush. 257. 3 Gill, 276. 3 Conn. 123. 2 ib. 53. 25 Wend. 374. 14 Mo. 220.) 2. The condition of the policy requires the production of the certificate of the nearest magistrate or notary public. This condition is to be taken most strongly against the underwriter. The certificate of the nearest *magistrate* was produced, and this answers the condition. See *Phillips* v. *The Protection Insurance Company*, 14 Mo. Rep.

LEONARD, Judge, delivered the opinion of the court.

It was a condition in this policy that the insured, immediately after the happening of a loss, should give notice of it, and as soon thereafter as possible deliver in a particular account of the loss, verified by the party's affidavit, and " procure a certificate under the hand of a magistrate or notary public most contiguous to the place of the fire, and not concerned in the loss, as creditor or otherwise, or related to the insured, that he is acquainted with the character and circumstances of the insured, and has made diligent inquiry into the facts set forth in the statement ; and knows or verily believes that the party

really and by misfortune, and without fraud or evil practice, has sustained, by such fire, loss to the amount therein mentioned." This stipulation, for the production of a certificate of this character, seems to be an ancient and very common provision in a fire policy, not intended to conclude the underwriters as to the facts required to be certified to, the loss, and the amount of it, but stipulated for, on their part, as an additional protection against the fraud of the insured. As it is a provision, however, for their own security, they may, of course, waive it, if they think proper, or their conduct towards the insured, in relation to it, may be such that it would be inequitable for them afterwards to set up the want of it as a ground of defence to an action, and in such cases, they are estopped, as a sheer matter of law, from doing so, upon the principle common to all equitable estoppels, that the words or acts of a party, which cannot afterwards be contradicted, without fraud and injury to those whose conduct has been influenced thereby, shall conclude the party, without any reference to the real truth of the matter. In the first instance, the question of waiver is one for the jury, and in the other, a question of law for the court.

In the present case, the court, in effect, directed the jury that the facts suggested in the tenth instruction amounted, in law, to a waiver of the required certificate, (for it seems to have been assumed that notary Pritchartt's certificate was not in conformity with the condition, and that both of the justices, being more remote from the fire, were not authorized to act,) and whether they do so or not, is the question presented for our judgment.

These facts are, substantially, that the insured gave due notice of the loss, and within a reasonable time afterwards, a particular account of it, verified by his affidavit, accompanied by the certificates of Pritchartt, Allen and Vogel, read in evidence, and a statement and appraisement of the goods saved from the fire, declaring, at the time, that this completed his preliminary proof, and was intended as a compliance with the conditions of the policy ; that the defendant made no objection

to the proof upon the score of its non-conformity with the condition, but went into an investigation of the amount of the loss, and after examining the defendant and his books, on the 8th of June, stated to the plaintiff the amount of the loss, as thus ascertained, and offered to pay that sum on account of it. The certificate of Pritchartt, the nearest officer, as read in evidence, was given on the 28th of February, immediately after the fire, and was to the effect that the fire occurred in the plaintiff's house, and was the work of an incendiary, but that the answer he received, as to the character and circumstances of the plaintiff, were such, that he could not arrive at a conclusion as to the fairness or amount of the loss; and the other two certificates, afterwards given by the justices of the peace, were in conformity with the stipulation.

The plaintiff refused to receive the amount offered on the 8th of June, and afterwards, other communications passed between the parties in writing, in relation to the amount to be paid, which were finally closed by a letter from the defendant, of the 18th June, declining to make any further offer, and stating that, if the one already made was not accepted, they should expect a strict compliance with the conditions of the policy, and require the production of a certificate from the nearest notary. This was the first time any objection was taken to the certificates. Here, the correspondence between the parties closed, and this suit was afterwards commenced.

The case of *Worsly* v. *Wood*, decided in the King's Bench, (in 6 Term Rep. 710,) was a suit by the insured upon a fire policy, containing a stipulation to the effect that the insured, upon the happening of a loss, should procure "a certificate of the minister, churchwardens and some reputable householders of the parish, importing that they knew the character, &c., of the insured, and believed that he really sustained the loss, and without fraud."

The controversy was as to the extent of the loss, and the minister and churchwardens refusing to certify to the full amount claimed by the insured, he procured the certificates of

other reputable householders in the parish, and the question was, whether the procuring of a certificate was a condition precedent to the plaintiff's recovery, and if it were, whether the certificates of the other persons were a sufficient compliance with it, and the court decided, after a divided opinion in the Common Pleas, in the same case, (2 Hen. Black. 574,) that it was a condition precedent, and that the certificates of other persons was not a compliance with it. This was the first decision upon the question, and it has been generally followed in the United States. (*Oldm*m v. *Bewicke*, 2 Hen. Black. 277, note *a.* Angel on Insurance, sec. 226 and cases.)

If the nearest officer were disqualified from acting, by interest or otherwise, or refused to act at all in the matter, the next nearest officer, it would seem, might be considered as embraced within the stipulation; but when the person indicated is qualified, and does act, and his certificate is almost the reverse of what is required, it would seem to be beyond our reach to help the insured, either by disregarding the stipulation or substituting a different one in its stead.

Whether the defendant had waived the production of a proper certificate, was not left to the jury as a question of fact, but was thrown entirely out of the case, and the jury were directed that, if they found the facts detailed in the tenth instruction, they must find for the plaintiff, without any reference to the intention of the defendant or the other circumstances of the transaction; or, in other words, that these facts estopped the defendant from setting up the want of a proper certificate as a ground of defence. We cannot concur in this direction. We are not required, by the authority of any adjudicated case that we are aware of, which is obligatory upon us, to declare that such is the legal result of these facts, and we do not think they ought to have that effect. The underwriters had a right to protect themselves against fraud by this provision, which they put into the contract for that purpose, and their engagement to the insured did not subject them to any obligation to pay him until he procured from the person indicated in the pol-

icy, the stipulated certificate. They might, it is true, have waived the proof, absolutely or temporarily; but we cannot hold that their failure to make the objection at the beginning, and going into an examination of the extent of the loss, and offering to pay the amount thus ascertained, was an absolute waiver of the production of a proper certificate, when they called for it, not only before the suit was brought, but during the treaty for the adjustment, or at least at the close of it. They might, it is true, have declined entering upon any investigation, as to the loss, until the stipulated certificate was produced, and their going into the inquiry, without making any objection to the certificates presented, especially when they were informed it was all the preliminary proof the party proposed giving, would afford a natural inference that they waived, temporarily at least, the production of any other certificate, and were willing to pay, if otherwise satisfied of the fairness of the loss, and the extent of it. But we do not think this conduct, on the part of the underwriters, ought to conclude them, as *a matter of law*, unless the insured were thereby deprived of an opportunity of procuring the necessary certificate. The natural inference to be derived from the conduct would seem to be, that they waived, for the present, any objection to the certificate; and if they had not before or at the close of the treaty for the adjustment, made the objection, but had waited till the suit was brought, they would, probably, have been estopped from relying upon it, and this, it is believed, is as far as the cases have yet gone upon this subject.

Whether the circumstances of the case will turn out to be such as to justify the inference that the defendants did, in fact, waive the production of any other certificate, is a question for a jury, and not for us. All we determine is, that the facts indicated in the instruction do not, under the circumstances of the case, conclude the defendants, as a matter of law, leaving the question of waiver to be determined by a jury as a matter of fact, upon proper evidence to be submitted to them.

The result is, the judgment must be reversed, and the cause remanded; and the other judges concurring, it is so ordered.