STATE OF MISSOURI at the Relation of the CONTINENTAL INSURANCE COMPANY of the City of New York, a Corporation, Relator, v. WILLIAM DEE BECKER, JOSEPH KANE and EDWARD J. McCULLEN, Judges of the St. Louis Court of Appeals.—77 S. W. (2d) 100.

Division Two, December 1, 1934.

*Greensfelder & Grand, Williams & Huston* and *Rubey M. Hulen* for relator.

*Cullen, Fauntleroy & Edwards* for respondents.

WESTHUES, C.—Original proceeding by certiorari. Relator alleges that the opinion of the St. Louis Court of Appeals, in the case of Weiss v. Continental Insurance Company, 61 S. W. (2d) 392, contravenes in certain respects controlling decision of this court in

particular a ruling announced in the case of Noonan v. Hartford Fire Ins. Co., 21 Mo. 81.

The opinion of the Court of Appeals deals with a number of questions not involved in this proceeding and, therefore, we will embody herein only so much of the opinion of the Court of Appeals as will be necessary to an understanding of the issues before us.

Plaintiff, Weiss, in that case, sued upon a policy of fire insurance. He had taken the cause of action, by assignment, from Morris. J. and Frank E. Yawitz whose property was covered by the policy. The fire occurred on January 25, 1931. Provisions of the policy quoted in the opinion of the Court of Appeals read in part as follows:

" 'The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representatives, and shall permit extracts and copies thereof to be made.

" 'This company shall not be held to have waived any provisions or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.' "

One of the defenses of the company was that the insured had failed to submit to an examination, as requested by the company, and also had failed to produce bills, invoices, etc., in support of the claim. The opinion of the Court of Appeals discloses that the insured were notified, on February 26, 1931, that the proof of loss was insufficient because no books, bills or invoices had been submitted in support of the claim. To this the insured replied that the bills had been destroyed but duplicates would be furnished. The opinion further discloses that no such bills or invoices were ever submitted to the company.

We further learn from the opinion that during the first sixty days after the fire there was a continuous controversy between plaintiff, an insurance adjuster and assignee of the claim, and a man named Bierman, an adjuster for the defendant company. The position of plaintiff was, that during the controversy between the two men mentioned, Agent Bierman, by his conduct, waived any right the company may have had to require the insured to submit to an examina-

tion or to furnish the invoices, etc., as requested and as required by the contract of insurance.

The defendant requested the trial court to give a peremptory instruction at the close of the case directing a verdict for the defendant. This the court overruled. Plaintiff asked, and the court gave Instruction No. 1 on the subject of waiver. The giving of this instruction was assigned as error by the defendant. The defendant in that case, relator here, contends that that part of the opinion of the Court of Appeals disposing of this question contravenes certain decisions of this court. The part of the opinion of the Court of Appeals disposing of this question reads as follows:

"The chief insistence of defendant is that its requested peremptory instruction should have been given at the close of the entire case. As the basis for the point it argues that a breach on the part of the insured stands admitted as to the policy provision relating to the examination under oath, and the production of books, bills, and invoices; and that there having been no waiver of such condition on defendant's own part, an action on the policy was not maintainable under its own terms.

"We have heretofore quoted the provisions of the policy that the insured, as often as required, should submit to an examination under oath, and produce for examination all books of account, bills, invoices, and other vouchers; and that no action on the policy should be sustainable until after full compliance by the insured with the several policy requirements. Such a provision for the examination of the insured and his papers is indeed a valid one, and a failure on his part to comply with a demand reasonably based upon it will postpone his right to sue where the policy so provides, as in the instant case. [Phillips v. Protection Insurance Co., 14 Mo. 220; Fleisch v. Insurance Company of America, 58 Mo. App. 596; Knight v. Firemen's Insurance Co. (Mo. App.), 49 S. W. (2d) 682; 26 C. J. 388, 389; 14 R. C. L., page 1342, sec. 513.]

"Plaintiff suggests several reasons why, as he views the case, the failure of his assignors to have submitted to the examination set for March 30th, more than two months after the fire, was not fatal to their right to maintain the action, but it seems that, aside from all other considerations, their refusal may be excused upon the ground of waiver.

"Having been inserted in the policy for the benefit of defendant, the provision in question was one which might be waived by it (26 C. J. 281, 390); and the waiver in this case is to be placed upon a previous denial of liability. In other words, it was essential that the demand for an examination of the insured be made in good faith; and if defendant's prior conduct was inconsistent with the idea that the examination was to be conducted in good faith, and if it had been brought home to the insured that defendant had already determined

to deny all liability, then the law would not insist upon the doing of a useless thing, and would not penalize the insured because of their failure to have acceded to defendant's demand.

"Here, the very second day after the fire, Bierman stated that he was 'going to see these boys sweat blood before they get a dime out of this fire.' Such a statement at the very inception of the controversy is hardly to be reconciled with the idea that it was Bierman's purpose to investigate the claim with a view to its amicable adjustment. [Siegle v. Phoenix Insurance Co., 107 Mo. App. 456, 81 S. W. 637.] Furthermore, his attitude afterwards in ten or twelve conversations with plaintiff was that he 'had nothing to say and nothing to offer.' As early as March 18th he flatly called plaintiff a liar in connection with the assertion of the claim, and the request for the examination was not made until six days afterwards. For a long time the arson department of the company had been conducting an independent examination.

"We are not to be understood as holding that defendant's mere investigation of the loss was a denial of liability, or that it was to be deprived of its right to conduct an investigation by reason of the frequent demands of the insured, or their representative, that the loss be adjusted. Under the very terms of the policy the loss was not payable until sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss had been received by defendant. But separate and apart from the question of the investigation was the proof of acts and conduct which tended to establish a fixed purpose to deny liability; and a denial of liability is a waiver of the right to insist upon an examinaton of the insured or an inspection of his papers (26 C. J. 411), just as it is a waiver of other and similar conditions in the policy. [Siegle v. Phoenix Insurance Company, supra; Burgess v. Mercantile Town Mutual Insurance Co., 114 Mo. App. 169, 89 S. W. 568; Ferguson v. Home Insurance Co., 208 Mo. App. 422, 236 S. W. 402.]

"We are not saying that the evidence disclosed a waiver as a matter of law, but rather that the evidence tending to show that defendant at all times took the position that the fire was an incendiary one, and that it was not bound to pay anything, was sufficient, on conflicting facts, to take the question of waiver to the jury. [Maddox v. German Insurance Co., 39 Mo. App. 198.] It follows, therefore, that defendant's requested peremptory instruction in the nature of a demurrer to all the evidence was properly refused.

"Next error is assigned to the giving of plaintiff's Instruction No. 1 which was directed in general to the issue of waiver as the same has been discussed under the preceding point. The instruction covers more than two printed pages in the record, and to set it out in its entirety would but unduly lengthen this opinion and serve no useful purpose, since in any event the instruction is available to the

Supreme Court for purposes of review. [State ex rel. Union Biscuit Co. v. Becker, 316 Mo. 865, 293 S. W. 783.] Suffice it to say that it referred the jury to the testimony regarding Bierman's response to plaintiff's numerous requests for settlement, and told the jury that, if they found such facts to be true, then they could find that defendant had denied liability and had waived its right to have the insured furnish proofs of loss, or submit to an examination under oath, or produce their books of account, bills, invoices, or other vouchers or records.

"The objections to the instruction are that it hypothesized facts not in evidence; that it ignored facts, statements, and documents in evidence, and limited the jury's consideration to the testimony of plaintiff on the subject of waiver; and that the facts hypothesized in the instruction were not sufficient to constitute a waiver.

"We find that none of such objections are well taken. The facts hypothesized were in evidence, though it is true that, in referring the jury to the testimony regarding Bierman's statements to plaintiff, Bierman's exact language was not employed. However, the import of the language was the same in both instances, and therefore there is no room for the assertion that the instruction misinterpreted the evidence. That the facts hypothesized, if found to be true, were in effect a denial of liability for the loss and constituted grounds for the finding of a waiver, has already been decided. Nor is it a ground for complaint that the instruction ignored defendant's evidence, and limited the consideration of the jury to the evidence for plaintiff alone. It was plaintiff's right to have an instruction on any theory which his evidence tended to support, and such right was not affected by the fact that defendant may have offered countervailing testimony. [Jennings v. Cooper (Mo App.), 230 S. W. 325; Rooker v. Deering Southwestern Ry. Co. (Mo. App.), 204 S. W. 556; Collins v. Rankin Farms (Mo. App.), 180 S. W. 1053.]"

We believe the opinion of respondents to be in conflict with the Noonan case, supra, in holding that instruction number one was not subject to the objection "that the facts hypothesized in the instruction were not sufficient to constitute a waiver." It will be noted that the opinion holds, and we think correctly so, that the facts proven by plaintiff *did not disclose a waiver as a matter of law* but was sufficient on conflicting facts to take the question of waiver to the jury. Instruction number one, however, virtually told the jury that if they found the facts enumerated in the instruction to be true then the company denied liability and waived a compliance with the provisions of the policy. The facts enumerated in the instruction related entirely to conversations which occurred between the plaintiff, Weiss, and Bierman, the adjuster for the defendant. In these conversations, which occurred during the first sixty days after the fire, Bierman had often stated in substance, as the opinion of the

Court of Appeals discloses, that he had nothing to say and nothing to offer with reference to the loss or claim. Omitting the facts enumerated, which were in substance as above stated, the fore part and the concluding part of the instruction read as follows:

"The court instructs the jury that if you find and believe from the evidence that on or about February 6, 1931, Gus Weiss, the plaintiff, was the adjuster for the insured in the adjustment of the loss, and that Paul Bierman was the adjuster for said defendant insurance company in and about the adjustment of said loss, and that said Weiss, on or about February 6, called upon said adjuster Bierman . . . then you can find that the company denied liability and waived its right to have the insured furnish proofs of loss or to submit to an examination under oath and waived its right to have said insured produce any of their books of account, bills, invoices or other vouchers or records."

In approving that instruction the opinion contravenes the holding in the Noonan case, supra, because the instruction treated the facts enumerated therein as constituting a waiver as a matter of law, or rather that the facts enumerated in the instruction amounted to a denial of liability and that, therefore, the company had waived the provisions of the policy here in question.

In the Noonan case the policy contained a provision that in the event a loss occurred the insured was required to obtain a certificate of the nearest magistrate or notary public certifying to the fairness of the claim. A loss occurred and the insured was unable to obtain a certificate from the nearest magistrate because such magistrate did not think the claim an honest one. The insured thereupon obtained a certificate signed by two other magistrates and submitted his claim to the company. Upon receiving such claim the company made an appraisal of the loss and offered the insured a certain sum in settlement of the claim. The insured refused to accept the offer, whereupon the company for the first time demanded a strict compliance with the provisions of the contract.

This court in passing upon that question said: "As it is a provision, however, for their own security, they may, of course, waive it, if they think proper, or their conduct towards the insured, in relation to it, may be such that it would be inequitable for them afterwards to set up the want of it as a ground of defence to an action, and in such cases, they are estopped, as a sheer matter of law, from doing so, upon the principle common to all equitable estoppels, that the words or acts of a party, which cannot afterwards be contradicted, without fraud and injury to those whose conduct has been influenced thereby, shall conclude the party, without any reference to the real truth of the matter. In the first instance, *the question of waiver is one for the jury,* and in the other, a question of law for the court. (Italics ours.)

"In the present case, the court, in effect, directed the jury that the facts suggested in the tenth instruction amounted, in law, to a waiver of the required certificate (for it seems to have been assumed that notary Pritchartt's certificate was not in conformity with the condition, and that both of the justices, being more remote from the fire, were not authorized to act), and whether they do so or not, is the question presented for our judgment. . . .

"Whether the defendant had waived the production of a proper certificate, was not left to the jury as a question of fact, but was thrown entirely out of the case, and the jury were directed that, if they found the facts detailed in the tenth instruction, they must find for the plaintiff, without any reference to the intention of the defendant or the other circumstances of the transaction; or, in other words, that these facts estopped the defendant from setting up the want of a proper certificate as a ground of defence. We cannot concur in this direction. . . . They might, it is true, have waived the proof, absolutely or temporarily; but we cannot hold that their failure to make the objection at the beginning, and going into an examination of the extent of the loss, and offering to pay the amount thus ascertained, was an absolute waiver of the production of a proper certificate, when they called for it, not only before the suit was brought, but during the treaty for the adjustment, or at least at the close of it. . . .

"Whether the circumstances of the case will turn out to be such as to justify the inference that the defendants did, in fact, waive the production of any other certificate, is a question for a jury, and not for us."

We are of the opinion that the facts in the Noonan case pointed more to a waiver than the facts in the case before us and yet this court held that the question of waiver was one for a jury.

So in this case the question, of whether the company, by its conduct, in effect denied liability and waived compliance with certain provisions of the contract of insurance, should have been left to a jury under proper instructions. Instruction No. 1 failed to do this and, therefore, was erroneous. Had the facts enumerated in the instruction constituted denial of liability and a waiver as a matter of law the instruction would have been in proper form. But, under the facts as enumerated in the opinion of the Court of Appeals, the question of whether the company denied liability and, therefore, waived a compliance with the provisions of the policy should have been submitted to the jury. The instruction should have been so worded as to leave the question to the jury to find from all the facts and circumstances in the case whether the company, in fact, by their conduct, denied liability.

Respondents' attorneys in their brief called our attention to the fact that the Noonan decision was written seventy-nine years ago

when fire insurance was in its infancy in this State and country. No case has been cited, however, which overruled or criticized the principle of law announced in the Noonan case. That an opinion can thus stand untarnished through so many years is good evidence of its soundness. The principle there announced has been approved in later cases in this court and also in other states of the union. Note what this court said in Schwab v. Brotherhood of American Yeomen, 305 Mo. 148, 264 S. W. 690, 1. c. 692:

''A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part. [First National Bank v. Maxwell, 123 Cal. 360, 55 Pac. 980, 69 Am. St. Rep. 64; Kilpatrick v. Railroad, 38 Neb. 620, 57 N. W. 664, 41 Am. St. Rep. 741; Viele v. Insurance Co., 26 Iowa, 9, 96 Am. Dec. 83; Swedish American Bank v. Koebernick, 136 Wis. 473, 117 N. W. 1020, 128 Am. St. Rep. 1090.] It has been said that the law of waiver is a 'technical doctrine introduced and applied by courts for the purpose of defeating forfeitures.' It has also been said that in insurance cases the courts are inclined to grasp any circumstances which indicate an election to waive a forfeiture, although insufficient to create a technical estoppel. But even in insurance cases the *intention to waive* must plainly appear, or else the acts or conduct relied upon as constituting waiver must involve *some* element of estoppel. [Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 7 Ann. Cas. 1144.]''

Also note what the Springfield Court of Appeals said in Springfield Security Co. v. Boren, 275 S. W. 566, 1. c. 567:

''A waiver is the intentional relinquishment of a known right. [27 R. C. L., p. 904; Carpenter v. St. Joseph Life Ins. Co., 212 Mo. App. 336, 246 S. W. 623; Adams v. Hartford Fire Ins. Co., 193 Iowa, 1027, 188 N. W. 823, 24 A. L. R. 182.] No one should be held to have waived his rights, unless such waiver is distinctly made, with full knowledge of the rights alleged to have been waived. The facts— that the right is known and the intention to waive—must plainly appear. [27 R. C. L., p. 906.] The question of waiver is generally one of fact, and the sufficiency of the evidence to establish the facts is for the jury. [27 R. C. L., p. 912.]''

In 67 Corpus Juris, pages 311, 313, section 13, it is said:

''Waiver, it has been stated, is a mixed question of law and fact. Within general rules applicable to the trial of civil cases, whether or not there has been a waiver in a given case is ordinarily a question of fact, for the jury to decide, under proper instructions of the court. The question whether or not there has been a waiver, where it is a matter of inference, or is to be established by the weight of evidence, is one of fact for the determination of the jury. If the

established facts permit reasonable minds to differ as to the inferences or effects from them, a question of fact arises, to be determined by court or jury, according as the parties see fit to submit the controversy for decision. . . .

"Inasmuch as intention is an operation of the mind, the existence of the intention to waive the right or advantage in question is generally a question of fact. Where the intention is disputed, it necessarily becomes a question for the determination of the jury; it is for the jury to say what the conduct of the party against whom a waiver is claimed means or signifies."

Numerous cases from various states, including Missouri, are cited in support of this text.

On certiorari the sole question for our consideration is whether or not the opinion of the Court of Appeals announced a. rule of law contrary to a ruling of this court. Respondents' attorneys have questioned the soundness of the Noonan case and have indicated that because of its age it is no longer a controlling decision. The authorities, other than the Noonan case, were cited to demonstrate that the rule of law announced in the Noonan case upon the point in question controls in this State and is generally accepted as the law in other jurisdictions.

We, therefore, hold that the opinion of the Court of Appeals, approving Instruction No. 1, is in conflict with the rule of law announced in the Noonan case. It is, therefore, ordered that the record and opinion of the Court of Appeals in the case of Weiss v. Continental Insurance Company, supra, be quashed. *Cooley* and *Fitzsimmons, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.