Dan CALVERT and Sandra Calvert and Earl Calvert, Jr., Respondents,

v.

SAFECO INSURANCE COMPANY OF AMERICA, Appellant.

No. WD 33,681.

Missouri Court of Appeals, Western District.

Sept. 13, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 15, 1983.

Application to Transfer Denied Dec. 20, 1983.

Don B. Roberson and John P. Poland, Kansas City, for appellant.

Kaplan, Shanberg, Bigus & Osman, Kenneth E. Bigus and Lawrence W. Bigus, Schroeder & Schroeder, Robert A. Schroeder, Kansas City, for respondents.

Before TURNAGE, P.J., and MANFORD and KENNEDY, JJ.

TURNAGE, Presiding Judge.

Dan Calvert, Sandra Calvert, and Earl Calvert, Jr. filed an action against Safeco

under a fire insurance policy. After being directed by the court to return a verdict in favor of the Calverts, the jury awarded (1) Dan and Sandra Calvert the sum of $36,-207.20 on the insurance policy, $1.00 penalty, and $12,878.29 for attorney fees; and (2) Earl Calvert, Jr. $19,725.42 on the policy, $2,794.38 for interest, $2,401.98 penalty, and $8,948.00 for attorney fees. The court entered judgment thereon.

On this appeal, Safeco contends: that the trial court erred in directing a verdict for the Calverts when questions of fact existed as to whether the Calverts had failed to cooperate with the insurance company in its investigation of the casualty, as mandated by the policy; that the trial court erred in directing a verdict for the Calverts when a factual question existed as to whether the insured had failed to comply with the policy by increasing the hazard; that the plaintiffs' petition failed to state a cause of action because the Calverts failed to plead compliance as a condition precedent to sustaining their action; and that the court erroneously excluded certain evidence relevant and material to the issue of Safeco's vexatious refusal to pay under the policy. Reversed and remanded.

On June 14, 1980, an explosion and fire occurred at the Kansas City home of Dan and Sandra Calvert. The Calverts had purchased the home nine months prior to that date from Earl and Eleanor Calvert, Dan's brother and sister-in-law. Earl financed the purchase of the home and held a promissory note on it secured by a deed of trust.

On or around June 11, 1980, Dan, Sandra, and their children visited a farm owned by Earl located about three to four hours from Kansas City. They first learned of the explosion and fire on the morning of June 14, 1980, from Earl, who drove out to the farm to inform them. The Calverts quickly left the farm and drove directly to the home to see the damage.

At the time of the occurrence, the home was insured by Safeco. The Safeco policy listed Dan and Sandra as homeowners, and Earl as the insured mortgagee.[1]

The explosion occurred in the basement of the dwelling. When the firemen arrived, they entered the basement forcibly through the padlocked basement door, the only entrance to the basement. Upon entering the basement, they observed an open fire emitting from a torn gas line adjacent to the furnace. Near the furnace they observed a wrought iron coffee table holding a coffee maker, an automatic timer, a hot plate in the "on" position, and burned remnants of a newspaper and a ball of twine.

The basement was the only part of the house which suffered actual burning. The rest of the house sustained severe damage from the explosion which moved the dwelling off of its foundation, blew windows out, and pulled walls loose. In addition, all of the furnishings, clothes, and food in the house suffered explosion, water, and smoke damage. The Calvert house was ultimately determined to be a total loss, and was torn down by the city.

The Calverts notified Safeco of the incident on the day of the explosion, and on that same day, a Safeco representative advanced them $1,500. The Calverts then rented another house from Dan's brother Earl for $200 a month. Safeco gave them proof of loss forms, which they filled out and returned on June 26, 1980. On July 2, 1980, Safeco returned the forms to the Calverts and asked them to re-submit them along with receipts, photographs, and other documentation. Safeco stated that the cause of the fire and explosion was being investigated for the possibility that it had been intentionally started. On July 11, 1980, Safeco informed the Calverts that because the cause of the explosion and fire was still unknown and because sufficient proof of loss information had not been supplied, the company was extending the investigation period for an additional 45 days, beginning July 14, 1980. The Calverts re-submitted the proof of loss forms on July

1. The policy provided coverage of $50,000 on the residence, $5,000 on appurtenant structures, $25,000 on the contents of the residence, and $10,000 for additional living expense resulting from loss of use of the home.

16, 1980, along with some 17 pages describing each item lost, when it was purchased, and its replacement cost.

On August 26, 1980, Safeco informed the Calverts that it was again extending the investigation period for an additional 45 days, beginning on that date, because the proof of loss forms were still under investigation. The Calverts submitted a second supplemental proof of loss form to Safeco on September 22, 1980. In a letter dated October 27, 1980, Safeco informed the Calverts that it was extending the investigation for a third 45 day period. In this letter, Safeco specified a number of aspects of the investigation about which they wished to obtain additional sworn statements from the Calverts, including verification of the proof of loss and the possibility that means within the knowledge or control of the Calverts created an increase of hazard. The Calverts' counsel responded by telephone to Safeco's representative on October 27, 1980, and again in writing on October 29, 1980, stating that although the Calverts intended to file suit as soon as possible, they were willing to give an additional statement at a mutually convenient time. Safeco's representative took no further action to obtain such a statement before he was notified on November 4, 1980, that the Calverts were filing suit, or indeed, before he filed an answer to the Calverts' petition.

On November 5, 1980, the Calverts filed suit against Safeco, requesting payment under the policy. Safeco's answer pleaded, along with a general denial, an affirmative defense which claimed that the plaintiff failed to cooperate with the company in its investigation of the incident. Safeco noted, with respect to this alleged failure to cooperate, that the Calverts failed to give "supplemental sworn statements on the cause or origin of any reported loss, under circumstances that demonstrated an increase of hazard ..."

The policy states, in pertinent part:

Conditions suspending or restricting insurance ... [T]his company shall not be liable for loss occurring ... while the hazard is increased by any means within the control or knowledge of the insured ...

Requirements in case loss occurs ... The insured shall give immediate written notice to this company of any loss ... the insured shall render to this company a proof of loss.... The insured, as often as may be reasonably required, shall ... submit to examinations under oath by any person named by this company ... Suit ... No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with ...

In December of 1981, the Calverts filed a motion in limine, requesting that the court exclude all evidence relating to any affirmative defense, including increased hazard and/or arson and lack of cooperation by the Calverts, unless such evidence pertained to lack of cooperation prior to August 26, 1980, or to lack of cooperation after that date relating to examination of items referred to in the proof of loss.

The trial court granted the motion in pre-trial proceedings, stating that the issues presented were solely questions of law. The court found as a matter of law, that Safeco waived its right to a supplemental statement by not actively pursuing it, and that the defense of increase of hazard was not sufficiently pleaded in the answer. The court pointed out that no attempt had been made to amend the original answer, and that the only issue in the case, aside from the money owed to the Calverts under the policy, was the issue of vexatious delay.

I.

■ Safeco initially contends that the trial court erred in directing a verdict in favor of the Calverts because it held as a matter of law that Safeco waived the defense of failure to cooperate. It is well established under Missouri law that an insurer may, by its conduct, waive defenses which are otherwise available under a policy. *Kingsland v. Missouri State Life Insurance Co.*, 228 Mo.App. 198, 66 S.W.2d 959[4]

(1933). The question of whether or not the acts of the insurer or its agent did indeed work a waiver has been declared to be one for the jury, at least where the facts are not conceded, or the testimony is conflicting, or the proofs are capable of more than one construction. 14 Couch on Insurance 2d (Rev. ed.), Section 49B:19, at 23, and 22 Appleman, Insurance Law and Practice, Section 13001, at 295. This rule was followed in *State ex rel. Continental Insurance Co. of City of New York v. Becker,* 336 Mo. 59, 77 S.W.2d 100 (1934). The contract involved in that case contained a sworn statement provision similar to the one included in the Safeco policy. The *Becker* court held:

> The question of whether the company, by its conduct ... waived compliance with (the contracts provisions regarding examination of the insured) ... should have been left to a jury under proper instructions.

*Id.* at 105.

The trial court indicated it felt as a matter of law that Safeco had waived the right to a supplemental statement since the company took no action to obtain such a statement between October 29, 1980, Safeco's last communication with the Calverts' attorney before suit was filed, and November 5, 1980, the date when suit was filed. The court did, however, give Safeco the right to make an offer of proof through the testimony of Safeco's claims agent. Safeco's agent testified that his phone conversation and correspondence with the Calverts' attorneys left him with the impression that he would be contacted to finalize an appointment with the insureds. This testimony reveals that Safeco did not concede a waiver, and that the evidence as to waiver was conflicting and capable of more than one construction. Therefore, in light of *Becker,* it seems clear that whether or not Safeco waived the defense of the insureds' failure to cooperate by its conduct relative to obtaining another statement from the Calverts is a question of fact to be determined by the jury. Thus, the trial court erred in ruling, as a matter of law, that such a waiver had in fact

occurred, and in directing a verdict for the Calverts.

## II.

◼ Safeco also contends that the trial court erred in excluding evidence relevant and material to the issue of Safeco's vexatious refusal to pay under the policy. This court finds it unnecessary to consider this particular contention, since the trial court's finding of Safeco's vexatious refusal to pay must, in any event, be reversed and remanded for the reason explained immediately below.

The two statutes which authorize damages for vexatious delay, Sections 375.296 and 375.420 RSMo 1978, provide that the court or jury "in addition" to the amount due under the contract (Section 375.296) or the loss (Section 375.420) may award vexatious damages and attorney's fees. The judgment, under either statute, shall be for the aggregate sum. *Jones v. Prudential Insurance Co. of America,* 173 Mo.App. 1, 155 S.W. 1106, 1110 (1913), interpreted "aggregate sum" to presuppose an award by the jury in parts, as so much on the policy and so much on account of the other grounds therein mentioned. (*Jones* was based on application of Section 7068 RSMo 1909, an earlier version of the modern vexatious delay statutes). A more recent case held "where the judgment was satisfied, no amount remained due under the contract and there was no loss ... (and) nothing which vexatious damages ... can be made 'addition to.'" *State ex rel. U.S. Fidelity and Guaranty Company v. Walsh,* 540 S.W.2d 137, 141 (Mo.App.1976).

In the case at bar, since the trial court improperly ruled that as a matter of law Safeco had waived its defense of the Calverts' failure to cooperate, at the time of the jury verdict there was no proper award of actual damages in favor of the Calverts to which the jury might attach vexatious damages. Thus, the plaintiffs' vexatious damage award can not stand alone, and the issue of such damages must be reconsidered on remand.

### III.

Safeco next contends that the Calverts were required to plead, in compliance with a condition precedent in the policy, that they had not increased the risk of hazard.

Since increase of hazard may result in suspension or restriction of insurance, Missouri Insurance Practice, Section 3.36, at 112 (1971), it follows that absence of increase of hazard is a condition precedent to a successful recovery. However, this "condition" is in the nature of an affirmative defense which Safeco must plead in its answer. This conclusion is inescapable in view of the policy's language and structure, and in light of general principles of insurance policy construction.

The policy lists what it terms "*requirements* in case loss occurs." (emphasis added). This list includes notice of loss and proof of loss, conditions precedent which this court has consistently held must be pleaded by plaintiff. *Hilburn v. Phoenix Insurance Co.*, 129 Mo.App. 670, 108 S.W. 576, 578 (1908). Below this clause the policy provides that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the *requirements* of this policy shall have been complied with . . ." (emphasis added). When considered together, these two clauses clearly refer to those conditions precedent to maintaining an action which must be properly pleaded by the insured to state a cause of action.

In contrast to the notice and proof of loss provisions, the increase of hazard clause is located under bold print which terms it one of several "conditions suspending or restricting insurance." It is a source of some confusion that Safeco chose to use the term "condition" in this context rather than in reference to the traditional conditions precedent mentioned above which were instead labelled "requirements." General rules of construction are an aid in clearing up this confusion.

The general rule of construction for interpreting insurance policies was stated in *McNeal v. Manchester Insurance and Indemnity Company*, 540 S.W.2d 113, 120 (Mo. App.1976):

> The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole but insofar as open to different constructions, that most favorable to the insured must be adopted.

This court applies the rule in *McNeal* and concludes that although Safeco labelled the increase of hazard provision a "condition," when the contract is construed as a whole this provision is plainly recognized as a condition precedent to a successful recovery, rather than a condition precedent to bringing suit. Since only the latter type of condition must be pleaded by an insured, the Calverts did not fail to state a cause of action because they did not plead absence of increase of hazard. Any uncertainties that might remain concerning the word "condition" in the policy, can be resolved under the rule that the policy should be interpreted in the manner most favorable to the insureds. *McNeal,* supra. Under this rule of construction the result is the same, a fortiori, as that reached under the previous analysis, and the Calverts did not need to plead compliance with the provision.

### IV.

It follows that Safeco would have needed to plead the Calverts' increase of hazard as an affirmative defense if it wished to rely on this defense at trial. The Calverts contend Safeco did not plead increase in hazard as a defense, while Safeco contends it did. The only mention of increase in hazard in the Safeco answer is set out above in connection with the failure to cooperate issue. The answer pleaded that the Calverts failed to cooperate by failing to give supplemental sworn statements under circumstances which demonstrated an increase of hazard. The answer was directed toward the failure to cooperate defense and not at the defense of increase of hazard; increase of hazard was mentioned only incidental to the other defense. Thus, it cannot be said that Safeco pleaded the affirmative defense of the insureds' increase of hazard in its answer.

This naturally leads to the question of whether Safeco may amend its pleadings on remand. *Hounihan v. Farm Bureau Mutual Insurance Company of Missouri,* 523 S.W.2d 173, 175 (Mo.App.1975), stated the relevant general rule: "by first denying liability (based upon one or more particular defense(s)), the defendant was foreclosed from later advancing a different ground for denying coverage." The defendant in Hounihan initially relied on the defense that the fire in issue had had its origin in arson committed by the insured, and later attempted unsuccessfully to amend its defense to charge that the insured increased the hazard insured against by permitting volatile gasoline on the premises which burned with his knowledge and control. The Hounihan rule is a well-established exception to the broader provision of Rule 55.33 which states that a court should, within its discretion, liberally allow amendments to pleadings. See *Aetna Casualty & Surety Company v. Haas,* 422 S.W.2d 316, 321[8] (Mo.1968), and *State Farm Mutual Insurance Corporation v. Central Surety and Insurance Corporation,* 405 S.W.2d 530, 532[1] (Mo.App.1966), in accord with *Hounihan.*

*Kammeyer v. Concordia Telephone Company,* 446 S.W.2d 486, 490[2] (Mo.App.1969) added a twist to the general rule followed in Hounihan when it stated "(h)aving denied coverage on a specified ground, appellant may not thereafter deny coverage on a different ground ... (a)t least this is true if the original denial was made with full knowledge of the facts." The record indicates that Safeco had full knowledge of the facts regarding an increase of hazard by the Calverts as early as October 29, 1980, the date that the attorney for the Calverts wrote Safeco offering to make his clients available at an agreeable time for a supplemental statement. Safeco's agent was familiar with the crime lab results which reported the cause of the blaze and explosion, and knew at the time the company filed its answer that Dan Calvert had the only key to the locked basement area where the fire apparently began. From the time it learned on November 4, 1980, that the Calverts had filed suit, the only additional evidence Safeco could hope to gain from the Calverts' supplemental sworn statement was an admission that the insureds purposefully caused the incident. Such an admission or denial is not the sort of fact that the *Kammeyer* court considered must be known to the insurer before it is bound to its initially pleaded defenses. Therefore, under the well settled rule in *Hounihan* Safeco may not amend its answer to add the affirmative defense that the Calverts increased the hazard.

The judgment is reversed and this cause is remanded for further proceedings.

All concur.