WALTERS AUTO BODY SHOP,
INC., Respondent,

v.

FARMERS INSURANCE COMPANY,
INC., Appellant.

No. WD 44765.

Missouri Court of Appeals,
Western District.

April 14, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 2, 1992.

Lance W. LeFevre, Heilbron & Powell, Kansas City, for appellant.

P. Thomas Loughlin and Mitchell B. Martin, Loughlin, Johnson, Campbell & Martin, Kansas City, for respondent.

Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Farmers Insurance Company, Inc.[1], appeals from an order granting summary judgment in favor of Walters Auto Body Shop, Inc., in an action for recovery on a policy of insurance for property loss due to damage by fire. Farmers Insurance Company claims that the trial court erred in granting summary judgment to Walters Auto Body Shop, Inc., because the questions presented in the instant case are questions of fact properly determined by a trier of fact and not properly decided as a matter of law in a motion for summary judgment. The judgment is reversed and remanded.

In December 1984, Walters Auto Body Shop, Inc., ("Walters") contracted for insurance coverage with Truck Insurance Exchange, a member company of Farmers Insurance Group ("Farmers"). At the same time, Walters entered into an agreement with Prematic Service Corporation ("Prematic"), a billing company for Farmers. Under this agreement, Walters' annual premium payable to Farmers was to be billed to Walters by Prematic in twelve monthly installments, with an additional monthly service charge. Additionally, pursuant to the terms of the agreement, Walters was required to maintain a deposit with Prematic in the amount of one monthly premium. A provision of that agreement covered dishonored checks, stating: "It is understood, however, that if the check is presented and dishonored for any reason and the payment of the monthly deposit is not otherwise paid, or if the monthly deposit is not paid after a bill has been properly mailed to customer, the Prematic Service Corporation assumes no responsibility for the lapse of coverage or cancellation of a policy or policies covered under this Budget Agreement." As no copy of the insurance policy issued to Walters is included in the legal file it cannot be determined what agreement, if any, Farmers had with its insured. There is also nothing in the record concerning Farmers' agreement with Prematic on the subject of dishonored checks.

Prematic issues two types of billings: a regular billing when the premium for the prior month has been paid in full and a cancellation billing when the billing for the prior month has not been paid in full. Prematic's practice is to close a customer's account and cancel any policies of insurance that are serviced by that account when, following a cancellation billing, any payment made results in a balance still owing in an amount equal to or greater than 150% of the sum of the premium for the previous month plus any service charges due.

Walters' payment record is rife with notices of cancellation. On all but one previous occasion, however, Walters made a subsequent payment reducing the balance still owing to under 150% of the monthly premium plus service charge. On that occasion, May 1987, Walters made no payment pursuant to a notice of cancellation.

Its policy went out of force on May 31, 1987. Thereafter, on June 18, 1987, by agreement among Walters, Prematic and Farmers, the Prematic Service Agreement

---

1. This Court recognizes that the parties have stipulated that the proper defendant/appellant is Truck Insurance Exchange. To avoid further confusion, however, the appellant will be referred to as named above.

and the insurance policy it serviced were reinstated. From that point in time until November 1988, although Walters received numerous cancellation notices, its outstanding balance never exceeded 150% of the monthly premium.

In November 1988, Prematic made a fourth consecutive cancellation billing to Walters in the amount of $4,016.90, an amount which appears to be the amount for two monthly premiums. On November 23, 1988, Farmers' agent Ernie Collyer accepted a check drawn by Walters in the amount of $2,008.45. The amount of the check would have reduced the balance owing below the 150% required for the policy to remain in force. Collyer forwarded this check to Prematic, who received the check on November 28, 1988. The check was submitted to Walters' bank for payment but was returned to Prematic because Walters' account contained funds insufficient to cover the amount of the check. Prematic resubmitted the check, which was again returned because of insufficient funds on December 12, 1988. No other payment had been made by Walters at this time. On December 11, 1988, the building insured under the policy of insurance serviced by Prematic was destroyed by fire.

On December 13, 1988, a fifth consecutive cancellation billing was mailed to Walters reflecting that Walters' account with Prematic had been credited with the $2,008.45 payment of November 23, 1988. On December 14, 1988, Farmers issued a claims draft to Walters in the amount of $10,000.00. On December 15, 1988, Farmers stopped payment of the draft. On December 21, 1988, Walters tendered a cashier's check in the amount of $5,671.40, of which amount Farmers retained $1,700.50 for past due premiums. In a letter dated December 22, 1988, Farmers refunded to Walters the balance of $3,970.90. The letter informed Walters, "Our current underwriting requirements will not permit us to reinstate this policy, and we must decline your request for this insurance." The letter concluded by stating that the coverage applied for "will cease at 12:00 Noon on November 30, 1988 without further notice."

Walters filed suit against Farmers for recovery under the policy of insurance issued by Truck Insurance Exchange. Truck Insurance Exchange filed a general denial and alleged in its answer that it had been erroneously sued as Farmers Insurance Company, Inc.

Walters subsequently filed a motion for partial summary judgment and an affidavit by Walter Mainhart, owner and president of Walters. Walters, citing *Western Casualty & Sur. Co. v. Herman*, 318 F.2d 50 (8th Cir.1963), claimed that by sending an additional notice to Walters on December 13, 1988, Farmers offered to continue the policy "in full force without interruption," provided full payment as specified on the billing was received before December 31, 1988; that by this offer, Farmers treated the insufficient funds check as a "subsisting obligation"; and that the December 13 notice was an "express waiver" of any cancellation rights that Farmers may have had on November 30, 1988. Walters also claimed that by repeatedly accepting late payments without a lapse in coverage, Farmers waived its right to insist on prompt payment to continue coverage; that this repeated acceptance of late payments induced a reliance by Walters; and that Farmers is thus estopped to cancel the policy in that it did not notify Walters of its intention to insist on punctuality. In support of its position, Walters cited *Armour v. Cameron Mut. Ins. Co.*, 770 S.W.2d 464 (Mo.App.1989). Based on the holding in *Armour*, the trial court sustained Walters' motion for partial summary judgment and declared the insurance policy to be in full force and effect as of December 11, 1988. Subsequent to the entry of the trial court's order, the parties entered into a stipulation that the petition should be amended to name the defendant as Truck Insurance Exchange and that as a result of the fire to its building, Walters sustained damages in the amount of $225,000.00. Walters filed a second motion for summary judgment alleging that no genuine issue of material fact remained, and that Walters was entitled, as a matter of law, to judgment against Farmers in the sum of $225,000.00.

Walters' motion was sustained and this appeal followed.

■ On appeal, Farmers claims that the trial court erred in sustaining the motion for summary judgment. Farmers asserts that the question of whether it had waived or was estopped to rely on its rights pursuant to the November 15, 1988, cancellation notice is a question of fact to be determined by the trier of fact and not a question of law determinable by the court on a summary judgment motion. Farmers did not affirmatively plead failure of consideration nor did Walters plead estoppel with the particularity required by Rule 55.08. However, the particularity requirement will be waived if it is not attacked by motion of the opposing party. *McGuire v. Bode*, 607 S.W.2d 165, 167 (Mo.App.1980). As neither party raised the particularity issue, the defenses are treated here as properly pleaded. *Arnett v. Venters*, 673 S.W.2d 67, 72 (Mo.App.1984).

■ When reviewing a ruling on a motion for summary judgment, the record must be scrutinized in the light most favorable to the party against whom the motion was filed and against whom judgment was rendered, according to that party all reasonable inferences that may be drawn from the evidence. *West v. Jacobs*, 790 S.W.2d 475, 479 (Mo.App.1990). Summary judgment is a drastic remedy in that it denies the opposing party its day in court. Great caution must be exercised in its use. *Olson v. Auto Owners Ins. Co.*, 700 S.W.2d 882, 884 (Mo.App.1985). Summary judgment is inappropriate unless the prevailing party has shown by unassailable proof to be entitled thereto as a matter of law. *First Nat'l Bank v. Chemical Products, Inc.*, 637 S.W.2d 373, 375 (Mo.App.1982). Summary judgment may be granted only when the pleadings, depositions, admissions and affidavits on file show no genuine issue as to any material fact. Rule 74.04(c). "The fact in doubt must be a material one which has legal probative force as to a controlling issue." *First Nat'l Bank*, 637 S.W.2d at 375. While an appellate court will give great deference to the trial court's determination as to credibility of witnesses, no such deference is warranted in cases submitted entirely upon a written record. *Fay v. Director of Revenue*, 759 S.W.2d 879, 880 (Mo.App.1988).

In *Armour*, relied upon by the trial court, the insurer had established a pattern of conduct of accepting payment of premiums after the due date, thus inducing a reliance thereon by the insured. The Southern District held under those circumstances the insured is estopped to declare a forfeiture of the coverage because payment was not promptly made, without first notifying the insured of its intention to insist upon punctuality. *Armour*, 770 S.W.2d at 466. The issue in *Armour*, therefore, was the effect of a late payment. In the case at bar, prior to reaching the issue of the effect of Walters' late payment, there first exists the question of whether a timely payment was made. Particularly, at issue is the legal effect of Walters' tender to Farmers of a check, subsequently dishonored by Walters' bank for insufficient funds, for payment of the premium.

■ The general rule of law applicable to this issue is set out in *Martin v. Illinois Bankers Life Assur. Co.*, 91 S.W.2d 646 (Mo.App.1936). The court in *Martin* stated:

It is a universal rule of law that in the absence of an agreement to the contrary, the delivery of a check to the creditor and his acceptance of it is not payment of the debt or obligation until the check has itself been paid, and that when the check is not paid, it may not be said to have constituted payment of the debt or obligation for which it was given. Moreover, this rule extends as well to transactions falling within the purview of insurance law, which contemplates that insurance premiums are ordinarily to be paid in cash, and that in the absence of a different intention or agreement, the giving of a check therefor will not operate as payment.

*Id.* at 649.

Reference to 6 G. Couch, Couch on Insurance 2d §§ 31.43 & 31.44 (rev. ed. 1985), reveals that the rule enunciated in *Martin*

remains good law, even in light of the modern economy in which payment by check is commonplace. The rule still remains that payment by check is conditional until that check is paid, in the absence of agreement or circumstances indicating the contrary. From the record in the instant case, it cannot be determined if an express agreement existed to accept the check unconditionally, since the complete policy of insurance does not appear in the record.

■ An agreement to accept a check unconditionally can also be implied from the circumstances and conduct of the parties. *Bartleman v. Humphrey*, 441 S.W.2d 335, 342 (Mo. banc 1969). Unreasonable delay in presenting the check for payment has been held to imply absolute payment. *Id.* "The intention of the parties to treat a check as absolute or unconditional payment is a jury question." *Id.* at 343.

■ Once Walters makes a prima facie case, the burden of proving nonpayment of premiums and the lapse of the policy falls upon Farmers. *See Le Page v. Metropolitan Life Ins. Co.*, 314 S.W.2d 735, 737 (Mo.1958). For purposes of summary judgment, upon Farmers pleading that the payment of the premium was made by an insufficient funds check dishonored by Walters' bank, there is the presumption from *Martin* that the check was accepted conditionally. *Martin*, 91 S.W.2d at 649. The burden then shifts back to Walters to prove the check was accepted unconditionally or that Farmers' December 13, 1988, cancellation billing was an express waiver of its cancellation rights. Since Farmers pleaded nonpayment of a premium due to its receipt of an insufficient funds check, and Walters failed to plead facts which, as a matter of law, prove an agreement to accept the check unconditionally, there remains a genuine issue of material fact.

Neither the subsequent action of Prematic in issuing the December 13, 1988, cancellation notice nor the action of Farmers in issuing and then subsequently canceling a claims draft prove that Farmers treated the worthless check as an absolute payment or waived its cancellation rights as a matter of law. Waiver is the intentional relinquishment of a known right. Waiver should not be found unless the evidence shows that it was distinctly made, with full knowledge of the rights alleged to have been waived. *State ex rel. Continental Ins. Co. v. Becker*, 336 Mo. 59, 77 S.W.2d 100, 105 (1934). "The facts—that the right is known and the intention to waive—must plainly appear. The question of waiver is generally one of fact, and the sufficiency of the evidence to establish the facts is for the jury." *Id.*

It is not disputed that Walters' check was dishonored on December 12, 1988, and a notice of cancellation was mailed on December 13, 1988. The notice of cancellation credited Walters with the $2,008.45 payment of November 23, 1988, which was the payment to have been made by the dishonored check. One possible inference is that the dishonor of the check was unknown at the time the cancellation billing was prepared. Another equally possible inference is that Farmers' intended to accept the check unconditionally.

■ In addition, it was necessary that Farmers, in exercising its right to rescind or cancel, act promptly on the discovery of the facts from which its right arises. Otherwise, the right may be waived by treating the insurance contract as a subsisting obligation. *See Herman*, 318 F.2d at 55. The Tennessee Supreme Court recently addressed a similar problem in *Tallent v. Tennessee Farmers Mut. Ins. Co.*, 785 S.W.2d 339 (Tenn.1990). In *Tallent*, the insurance company issued an unconditional receipt to the plaintiff and a notice of reinstatement. *Id.* at 343. The plaintiff's check was ultimately dishonored. *Id.* at 342. The court stressed that contracts of insurance traditionally are contracts *uberrima fides* [2]. *Id.* at 340. It found that there was nothing in the issuance of the

---

**2.** Black's Law Dictionary defines this expression as, "A phrase used to express the perfect good faith, concealing nothing, with which a contract must be made; for example, in the case of insurance, the insured must observe the most perfect good faith toward the insurer." Black's Law Dictionary 1363 (rev. 5th ed. 1979).

receipt that would indicate that the insurance company was acting other than in the ordinary course of business or that it intended to accept the worthless check as binding. *Id.* at 343.

 In the instant case the facts are not sufficiently well developed to decide, as a matter of law, whether the worthless check was treated as absolute payment or if the December 13, 1988, cancellation billing was a waiver of the right to cancel. "Whether the insurer received and held a check for the amount of a premium which was dishonored as absolute payment of that premium is a question of fact." 6 G. Couch, Couch on Insurance 2d § 31.56 (rev. ed. 1985). The general rule that waiver is ordinarily a factual decision to be determined on a case-by-case basis is applicable as well. *See Becker,* 77 S.W.2d at 105. Material issues of fact remain. Summary judgment, therefore, was improper in this instance.

Although finding there are questions of fact, it is still necessary to determine whether, as further alleged by Walters, Farmers had established a pattern of conduct of accepting payment of premiums after the due date, thus inducing a reliance thereon by Walters. If the facts establish such conduct as a matter of law, then Farmers would be estopped to declare a forfeiture of the coverage or would be found to have waived its right to cancel for late payment. To determine if Farmers was estopped to cancel the policy or waived its right to cancel for late payment, the important event was not the tender of the insufficient funds check, but rather the tender of a valid check as late payment on December 21, 1988. By its reliance on *Armour,* 770 S.W.2d at 464, it appears the court found, as a matter of law, that Farmers waived or was estopped from canceling the policy due to its past conduct and Walters' tender of a cashier's check on December 21, 1988, in the amount of $5,671.40. Such a finding does not view the record in the light most favorable to Farmers as required in the granting of summary judgment. Particularly significant is the action of Farmers in May 1987, when Walters made no payment, late or otherwise, and the amount due exceeded 150% of the previous month's premium and service charges. The policy went out of force as of May, 31, 1987, and was not reinstated until June 18, 1987, under an agreement of the parties. While the record might arguably show that Farmers accepted overdue premiums as long as the amount due did not exceed 150% of the sum of the previous month's premium and service charges, it does not support a finding that, as a matter of law, Farmers waived its right to cancel when no payment at all was made and the balance fell below the required 150%.

The summary judgment entered by the trial court is reversed and the case is remanded for further proceedings.

All concur.