NOT DESIGNATED FOR PUBLICATION

No. 111,750

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MID-CENTURY INSURANCE COMPANY, *et al.*,
*Appellees*,

v.

JEREMIAH JOHNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed June 10, 2016.
Affirmed.

*Jeremiah Johnson*, of The Law Offices of Jeremiah Johnson, LLC, of Olathe, appellant pro se.

*Derek H. MacKay*, of Brown & James, P.C., of Kansas City, Missouri, *Justin S. Chapell* and *T. Michael Ward*, of St. Louis, Missouri, for appellees.

Before BUSER, P.J., LEBEN and BRUNS, JJ.

BUSER, J.: Mid-Century Insurance Company (Mid-Century) and Farmers Insurance Exchange (Farmers) (collectively, "insurers") filed a declaratory judgment action against their insured, Jeremiah Johnson. The lawsuit sought a judicial determination of whether the insurers had a duty to defend and indemnify Jeremiah Johnson under the terms of his homeowner's and umbrella insurance policies in response to a lawsuit filed by former employees of his law office. Johnson filed counterclaims against the insurers. Based upon a factual finding made by the jury on a special verdict form, the district court found, as a matter of law, there was no insurance coverage for the

1

claims alleged by the employees in the underlying litigation. Accordingly, judgment was entered in favor of the insurers and against Johnson. Johnson appeals.

FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2011, three women (plaintiffs) sued Johnson in the United States District Court for the District of Kansas for invasion of privacy, intrusion upon seclusion, outrage, and breach of fiduciary duty (underlying litigation). The plaintiffs were former employees of The Law Offices of Jeremiah Johnson, LLC, in Olathe, Kansas, where Johnson, an attorney licensed to practice in Kansas and Missouri, had his primary place of business.

Plaintiffs alleged that on numerous occasions prior to and including June 2, 2011, Johnson utilized the "'Cam-u-flage[,]'" application or similar software program, which enables individuals to use an iPhone and/or iPad to conduct video surveillance to "surreptitiously film under the[ir] . . . desk" and obtain recordings that showed "Plaintiffs' legs and between their legs to the undergarments." Plaintiffs alleged that due to Johnson's intentional, negligent, and/or reckless intrusion upon their rights, they sustained damages including mental suffering, shame, humiliation, and loss of income in excess of $75,000 each. Additionally, plaintiffs sought punitive damages.

Prior to filing their lawsuit, plaintiffs reported the facts alleged in the complaint to the Olathe Police Department which began a criminal investigation of Johnson in June 2011. As a result, Johnson was convicted of eavesdropping, a class A nonperson misdemeanor in Johnson County District Court.

At the time plaintiffs' causes of action accrued, Johnson was insured under a homeowner's policy issued by Mid-Century, which provided a comprehensive personal liability limit of $500,000 per occurrence and an umbrella or excess liability policy issued

2

by Farmers with coverage in an amount not to exceed $1,000,000. Upon receipt of plaintiffs' petition, Johnson notified his insurers of the pending lawsuit.

On February 23, 2012, Stacy Melchionne, a Kansas Liability Claims Manager for Mid-Century and Farmers, notified Johnson that she received the notice he submitted on January 10, 2012. After reviewing his insurance policies and comparing them to the allegations raised in plaintiffs' petition, Melchionne advised that it appeared "there may not be coverage for indemnity or defense of [plaintiffs'] lawsuit" under either policy. To justify this determination, Melchionne quoted various provisions from Johnson's policies, describing the extent of each policy's coverage and the relevant restrictions, limitations, and exclusions. With regard to Johnson's homeowner's policy, issued by Mid-Century, Melchionne pointed to the following exclusions, among others:

> "SECTION II – EXCLUSIONS
> . . . .
> "Applying To Coverage E and F—Personal Liability and Medical Payments To Others
> "We do not cover bodily injury, property damage or personal injury which:
> > "1.  arises from or during the course of business pursuits of an insured.
> > "2.  is either:
> > a.  caused intentionally by or at the direction of an insured; or
> > b. *results from any occurrence caused by an intentional act of any insured where the results were reasonably foreseeable.*" (Emphasis added.)

With regard to Johnson's umbrella policy, issued by Farmers (but mistakenly referred to as Truck Insurance Exchange), Melchionne quoted the following exclusion, among others:

3

"PART III – EXCLUSIONS

"We do not cover damages:

. . . .

"5. Arising out of business or business property of an insured unless covered by underlying insurance described in the Declarations. Our coverage is no broader than the underlying insurance, except for our Limit of Liability."

Based upon Melchionne's determination that Johnson may not be entitled to indemnification under either of the policies, Mid-Century and Farmers undertook defense of the underlying litigation with the following reservation of rights:

"We will investigate this incident to determine the facts and to obtain information on any claims that may arise [therefrom]. Mid-Century Insurance Company and [Farmers] do so with a full reservation of its rights under the law and under the insurance policy. Neither by investigating, negotiating for settlement, or settlement, or by undertaking the defense of any legal action, which may result from this incident, does Mid-Century Insurance Company or [Farmers] waive its right to disclaim coverage both for defense and indemnity of the claims arising from this incident.

"Our right to disclaim coverage both for defense and indemnity for the above incident, is not limited to the reasons set forth above, and shall include any and all grounds for non-coverage or policy breech [*sic*] that may be revealed through or by our investigation.

"Based upon the foregoing, Mid-Century Insurance Company and [Farmers] reserve the right to, at any time upon reasonable notice to you, withdraw from the investigation of the incident or from the defense of any lawsuit or claim arising out of it.

"Mid-Century Insurance Company and [Farmers] further reserve their right to litigate, in a separate action, the issue of our duty to defend or indemnify the policyholder with respect to this claim. This action does not take away any of your rights under the policy, but preserves your rights and those of Mid-Century Insurance Company and [Farmers]."

4

Mid-Century and Farmers also sent Johnson a second reservation of rights letter on March 23, 2012, which was substantially similar to the February 23, 2012, letter.

Mid-Century and Farmers paid the fees of the private attorney Johnson had hired prior to the filing of plaintiffs' lawsuit and retained their own attorneys to represent Johnson in the underlying litigation. Of note, Johnson did not reject the insurers' defense of the underlying litigation.

On November 14, 2012, about 1 month after informing Johnson—in response to a letter from Johnson's private attorney—that Mid-Century and Farmers would "not be extending any offers of settlement at th[at] time," Mid-Century and Farmers filed the declaratory judgment action in the Johnson County District Court which is the subject of this appeal. The lawsuit sought a determination of whether either insurer had a duty to defend and indemnify Johnson in the underlying litigation.

In particular, Mid-Century contended that Johnson's homeowner's policy did not afford him any protection because the acts alleged in the underlying litigation did not meet the definition of a "'personal injury'" or an "'occurrence'" under the terms of the policy and were excluded from coverage because they (1) "result[ed] directly or indirectly from the employment of [plaintiffs]" and "relate[d] to a business of the insured or [arose] from or during the course of [Johnson's] business pursuits," (2) constituted a "violation of penal law or ordinance committed by or with the knowledge or consent of . . . Johnson," and (3) were done intentionally by or at the direction of Johnson or were "caused by an intentional act of . . . Johnson and the results were reasonably foreseeable."

Similarly, Farmers alleged that Johnson was not entitled to indemnification because the alleged acts did not constitute an "'occurrence'" as that term was defined in the umbrella policy and were excluded from coverage because they (1) "either [were] expected or intended from the standpoint of . . . Johnson," (2) "[arose] out of business of

5

an insured," (3) constituted a "violation of penal law or ordinance committed by or with the knowledge or consent of . . . Johnson," and (4) arose from "molestation or abuse of any person by . . . Johnson." Mid-Century and Farmers further alleged that the plaintiffs' damages were not covered because their injuries did not meet the definition of a "'bodily injury'" and/or "'property damage'" under the terms of the policies and punitive damages were specifically excluded from coverage.

Shortly after the filing of the declaratory judgment action, at the initiation of Johnson's private attorney, the plaintiffs settled their claims with Johnson for a total of $67,000 and dismissed their lawsuit with prejudice. Johnson utilized his own funds to settle the lawsuit.

On April 25, 2013, Johnson removed the insurer's declaratory judgment lawsuit to federal court but it was later remanded to the Johnson County District Court for failure of complete diversity. See *Mid-Century Ins. Co. v. Johnson*, No. 13-2191-RDR, 2013 WL 3013620 (D. Kan. 2013). While the case was pending in federal court, Johnson filed a counterclaim against Mid-Century and Farmers for breach of contract due to a failure to investigate, defend, and indemnify him in the underlying litigation, bad faith failure to settle, and vexatious refusal to pay. Specifically, Johnson alleged the insurers failed to fulfill their obligations under the insurance contracts despite the fact that the underlying litigation was included in the coverage of the policies and both insurers were "negligent and grossly negligent in their failure to investigate, defend, and indemnify [him]."

Johnson asserted that due to concerns about one of plaintiffs' work performance, he used an iPad to surveil her work in the file room while the attorneys were out of the office. Upon discovery of the iPad, plaintiffs terminated their employment and retained attorneys, who sent Johnson a demand letter accusing him of breaching plaintiffs' privacy and causing them personal injury. According to Johnson, he notified Mid-Century and Farmers of plaintiffs' accusations in June 2011.

6

Johnson asserted that despite receiving notice, the insurers did not investigate plaintiffs' claims or offer a defense for "at least three months." Johnson then employed counsel at his own expense and entered into pre-suit mediation in an effort to resolve the threatened litigation. Johnson claimed that due to the insurers' failure to attend the mediation, efforts to resolve the claims were unsuccessful. According to Johnson, the filing of the plaintiffs' lawsuit and criminal charges were attributable to the insurers' failure to "properly investigate, defend and settle the claims of [plaintiffs]."

Following the completion of discovery, Mid-Century and Farmers moved for summary judgment on both the declaratory judgment action and Johnson's counterclaims. The insurers argued that the unambiguous language of Johnson's policies clearly stated that not only did the claims alleged in the underlying litigation not fall within the insuring agreements, the acts were specifically excluded from coverage and, thus, neither insurer had a duty to defend and indemnify Johnson.

In response, Johnson filed his own motion for summary judgment. Regarding Mid-Century, Johnson contended that due to linguistic ambiguities, plaintiffs' claims fell within the insuring agreement and Mid-Century could "never meet its burden to show the existence of an applicable exclusion that nullifie[d] coverage for an otherwise covered claim." Regarding Farmers, Johnson alleged that because the letters Melchionne sent him incorrectly referenced Truck Insurance Exchange as the provider of his umbrella policy, rather than Farmers, Farmers never properly obtained a nonwaiver or reservation of rights agreement. As a result, under the doctrines of waiver and estoppel, Farmers was precluded from asserting defenses, because it necessarily had agreed to defend Johnson without a reservation of its rights to contest coverage.

On February 11, 2014, the district court held a hearing on the motions for summary judgment. The district judge concluded there were "a lot of fact issues out [t]here that a jury [would] have to consider." The district judge subsequently issued a

7

lengthy and detailed written order denying both parties' summary judgment motions, with the exception of Johnson's request for a definitive finding that the term bodily injury was ambiguous and, thereby, included mental distress without any requirement of showing an associated physical injury.

Subsequently, a 4-day trial was held whereupon the jury determined, on a special verdict form, that "the allegations of harm made [by plaintiffs] against Mr. Johnson were reasonably foreseeable from Mr. Johnson's conduct." Based upon this factual finding, the district court issued an order, finding that "coverage for the claims asserted against Jeremiah Johnson in the underlying lawsuits [was] precluded by the intentional acts exclusion contained within the [insurers'] policies." Consequently, the district court entered judgment in favor of Mid-Century and Farmers, and against Johnson on his counterclaims.

Johnson timely appeals.

PRELIMINARY PROCEDURAL CONSIDERATIONS

Johnson raises three issues on appeal. As a preliminary matter, we will consider whether these issues were preserved for appellate review.

First, Johnson contends "[t]he district court should have granted Mr. Johnson's Motion for Summary Judgment in its entirety." Johnson claims he sought summary judgment because the insurers waived or were estopped from applying their policy exclusions because they failed to honor their duties as insurance carriers by improperly reserving their rights, failing to investigate the underlying litigation, and failing to participate in settlement negotiations.

8

We have reviewed Johnson's motion for summary judgment and memorandum in support. We find nothing in these pleadings which seeks summary judgment based on the reasons Johnson now argues on appeal. In denying Johnson's motion for summary judgment, the district court identified and ruled on three arguments posited by Johnson in his motion.

First, Johnson asserted the Mid-Century policy was ambiguous with regard to the definition of bodily injury. Second, Johnson claimed the Mid-Century policy was ambiguous "because it allows coverage for unintended mental harm even if the insured's acts were intended and then later excludes coverage for bodily injury resulting from a reasonably foreseeable occurrence."

Third, the district court wrote that "Johnson argues that Farmers cannot disclaim coverage because it did not obtain a proper non-waiver or reservation of rights agreement to preserve policy defenses." This argument—which related only to Farmers—was based on a typographical error in the reservation of rights letter that referred to the umbrella policy insurer as Truck Insurance Exchange rather than Farmers. Notably, the district court declined summary judgment on this basis because "it was clear to Mr. Johnson, a lawyer, that his policy of insurance involved the two plaintiffs and he knew the correct policy number and terms of the same, as well as the parties."

Johnson does not appeal or brief the district court's denial of the motion for summary judgment on the grounds he raised and argued in the district court. On the other hand, Johnson did not request summary judgment on the grounds that he raises now on appeal. As a result, in ruling on Johnson's summary judgment motion, the district court was not given an opportunity to consider or determine the specific issues which Johnson now raises on appeal as error.

Similarly, for his second issue on appeal, Johnson contends: "The district court should have granted Mr. Johnson's motion for judgment as a matter of law." In this regard, Johnson states that "[t]he analysis of this issue closely tracks the analysis and law in Issue I. In the interest of efficiency, Mr. Johnson respectfully refers the Court to the full analysis in that section."

We have reviewed Johnson's oral motions for judgment as a matter of law at the conclusion of the insurer's case in chief and at the conclusion of all the evidence. In both instances, defense counsel sought judgment as a matter of law as it related to the inapplicability of the business pursuits exclusion in the insurance policies to the facts of this case. We find nothing in these oral motions which seeks judgment as a matter of law because the insurers waived or were estopped from arguing their policy exclusions due to their failure to honor their duties as insurance carriers.

As relates to issues I and II, as a general rule issues not raised before the district court may not be raised on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). While there are exceptions to this general rule, Johnson does not brief the applicability of an exception. Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal, and litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) (Rule 6.02[a][5] will henceforth be strictly enforced); *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) (cautioning future litigants to comply with Supreme Court Rule 6.02). We are persuaded that Johnson's complaints regarding the denial of his motion for summary judgment and his oral motions for judgment as a matter of law were not preserved for appellate review.

For his third issue on appeal, Johnson objects to jury Instruction nos. 7, 11, 12, 13, 14, 15, 16, and the verdict form because they "did not accurately reflect Missouri law because they required the jury to first determine whether policy exclusions applied, and, only if the jury found that no exclusions applied to the policies, could the jury determine whether the carriers breached their duties to defend, investigate, and settle." Johnson also claims the seven jury instructions erroneously stated Missouri law. Once again, we consider whether these instructional complaints were preserved.

On appeal, Johnson asserts that he objected at trial to the seven jury instructions and verdict form, but the record shows only a general objection to all the instructions and for a reason that is different than the one Johnson raises and argues on appeal. At trial Johnson only raised a generalized objection regarding "any of those instructions that would be characterized under the typical Missouri practice of the converse." Johnson does not brief this purported instructional error on appeal. Moreover, Johnson did not specifically object at trial to any of the seven instructions that he now complains about on appeal.

Although Johnson objected to the verdict form at trial, his sole objection was to submission of Question No. 4 which asked: "Do you find that Mr. Johnson's actions, in fact, were business-related?" This objection was consistent with the argument Johnson raised in his motions for judgment as a matter of law relating to the inapplicability of the business pursuits exclusion in the policies. Johnson abandons that argument and raises a new verdict form issue on appeal.

The propriety of the seven jury instructions and verdict form which Johnson raises for the first time on appeal was not preserved for appellate review. See *Godfrey*, 301 Kan. at 1044; *Duckworth*, 293 Kan. at 403; Supreme Court Rule 6.02(a)(5). Given our standard of review in considering instructional issues, however, we will revisit this issue

11

later in the opinion. See *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014).

At the instructions conference, although Johnson conceded that he did not have a "true waiver jury instruction" to provide to the district court, he made a proffer that one would be appropriate on the theory that the insurers waived their right to rely on policy defenses given the length of time between when the insurers received the plaintiffs' demand letter and the issuance of the insurers' reservation of rights letter. The district judge concluded, "I'm not sure a waiver in this sense is a jury issue . . . without knowing what you're contending [the insurers] waived. I think I can rule on that as a matter of law." After a brief argument, the district court then allowed the issue of the "waiver of the exclusions" to be considered as a "directed verdict on the issue of exclusions." Of note, when discussing this issue and the proffer of a waiver instruction, the district court inquired of Johnson's counsel, "[Y]ou cannot have coverage by estoppel or by waiver, right?" Johnson's counsel replied: "True."

We conclude that the issue of whether the insurers waived or were estopped from applying the policy exclusions in the insurance contracts was preserved for our review based on the brief argument raised during the instructions conference.

On another procedural matter, although Johnson has raised and briefed three issues on appeal, in his brief he also asserts the insurers "are liable for bad faith failure to settle." The insurers object to Johnson's appeal of any issue relating to their "alleged vexatious and bad faith conduct" because it is beyond his three "narrowly framed" issues on appeal. As discussed earlier, Johnson has appealed the denial of his summary judgment motion and his motions for judgment as a matter of law, seven jury instructions, and the verdict form. In his motion for summary judgment and motions for judgment as a matter of law, Johnson did not seek judgment on his counterclaim for bad faith conduct. Moreover, the issue of Johnson's counterclaim also was not listed on his docketing statement as an issue

12

to be raised on appeal. This matter was not preserved for appellate review. See *Godfrey*, 301 Kan. at 1044; *Duckworth*, 293 Kan. at 403; Supreme Court Rule 6.02(a)(5).

Finally, in his brief Johnson does not set forth the proper standard of review for appellate courts considering rulings relating to summary judgment motions, motions for judgment as a matter of law, or jury instructional error. See *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014) (summary judgment); *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 706-07, 317 P.3d 70 (2014) (judgment as a matter of law); *Clay*, 300 Kan. at 408 (jury instructions). This omission is contrary to Supreme Court Rule 6.02(a)(5) which requires "the appropriate standard of appellate review" to be included in the appellant's brief.

## DO THE DOCTRINES OF WAIVER AND ESTOPPEL ACT TO CREATE INSURANCE COVERAGE WHERE SUCH COVERAGE DOES NOT EXIST?

Apart from the procedural infirmities previously discussed, we will address the crux of the matter presented by Johnson on appeal—whether the district court erred, as a matter of law, when it determined that under Missouri law, the doctrines of waiver and estoppel do not act to create insurance coverage where such coverage does not otherwise exist.

On appeal, Johnson points to the delay that occurred after he notified his insurance agent of his receipt of a demand letter from plaintiffs' attorney about 8 months prior to the filing of the underlying lawsuit. He asserts that during this time the insurers violated their duties to investigate, defend, and settle the underlying litigation. As a consequence, Johnson asserts the insurers have waived their policy exclusions or should be estopped from asserting them.

The insurers respond that they "did not have actual knowledge of [Johnson's] claims until after the lawsuit was filed" when Johnson requested coverage under his policies. Upon receiving notice of the lawsuit on January 10, 2012, however, the insurers emphasize that they sent Johnson a reservation of rights letter only weeks later, on February 23, 2012, and filed a declaratory judgment action on November 14, 2012. With regard to estoppel, the insurers point out that "[i]n this declaratory judgment action, they advanced the very same coverage defenses initially asserted" in their reservation of rights letter sent to Johnson. In short, the insurers assert that a necessary predicate to estoppel was not present in this case because the insurers consistently asserted the same policy defenses.

Waiver and estoppel are distinct legal doctrines. *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 387 (Mo. App. 1989). First, we will review Missouri law regarding waiver in the context of insurance contracts. Waiver, the intentional relinquishment of a known right, may be express or implied, and if implied from conduct, the conduct must "'clearly and unequivocally show[] a purpose by the insurer to relinquish a contractual right.' [Citation omitted.]" *Morgan v. State Farm Fire & Cas. Co.*, 344 S.W.3d 771, 777 (Mo. App. 2011); see *Howard v. Farmers Ins. Co.*, 5 Kan. App. 2d 499, 505, 619 P.2d 160 (1980), *rev. denied* 229 Kan. 670 (1981). Under Missouri law, "[w]aiver should not be found unless the evidence shows that it was distinctly made, with full knowledge of the rights alleged to have been waived. [Citation omitted.]" *Walters Auto Body v. Farmers Ins.*, 829 S.W.2d 637, 641 (Mo. App. 1992). Moreover, as a general matter, the question of whether a party has waived a right is one of fact for the jury to decide. 829 S.W.2d at 641.

"Waiver[, however,] is not preferred as a basis for finding an insurer has relinquished policy defenses; estoppel, with some element of unfairness, lack of notice, or other detriment to the insured, is the preferred theory when the insurer elects a policy defense. [Citation omitted.]" *Morgan*, 344 S.W.3d at 777. Nevertheless, similar to

14

waiver, estoppel should also be applied with care and caution and only when all elements of the doctrine are clearly satisfied. *Versaw v. Versaw*, 202 S.W.3d 638, 650 (Mo. App. 2006).

In order to estop an insurer from asserting a policy defense, Missouri law requires the insured to satisfy the following elements: "(1) the insurer asserted a policy defense in denying coverage and later asserted another inconsistent ground, (2) the insurer's actions induced the insured to rely on the original defense and thereby caused the insured injury, and (3) the insured suffered prejudice as a result of such reliance. [Citations omitted.]" *Versaw*, 202 S.W.3d at 650; see *Shahan v. Shahan*, 988 S.W.2d 529, 534 (Mo. 1999) ("Prejudice beyond the mere filing of a lawsuit is required for estoppel to apply.").

Estoppel may also arise when an insurer assumes its insured's defense without a reservation of rights or a nonwaiver agreement, because "'defending an action with *knowledge* of noncoverage under a policy of liability insurance without a non-waiver or reservation of rights agreement . . . precludes the insurer from subsequently setting up the fact and defense.' [Citations omitted.]" *Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 765 (Mo. 2009).

Mid-Century and Farmers contend that Johnson's attempt to avoid the exclusion in his insurance policies under the doctrines of waiver and estoppel necessarily fails. As they write:

> "Under no circumstances did the Insurers waive their coverage defenses. Nor are they estopped from asserting them. Thus, under no circumstances, was Johnson entitled to judgment as a matter of law. The very fact that the Insurers' policies afford no coverage for the underlying claims brought against him defeats his first two points on appeal."

15

The insurers' argument has merit. Caselaw in Missouri and Kansas and the vast majority of jurisdictions provides that the doctrines of waiver and estoppel are "unavailable to bring within the coverage of an insurance policy risks not covered by its terms or expressly excluded therefrom, [citations omitted,]" because "neither waiver nor estoppel may create a new contract for the parties." *Lawrence v. New York Life Ins. Co.*, 649 S.W.2d 461, 465 (Mo. App. 1983); see, *e.g.*, *Swanston v. Cuna Mutual Ins. Society*, 7 Kan. App. 2d 28, 31, 636 P.2d 1368 (1981) ("[I]t is the well settled general rule waiver and estoppel cannot be used to expand the coverage of an insurance contract. See 43 Am. Jur. 2d, Insurance § 1058, p. 983 [1969]; 45 C.J.S. Insurance § 674, p. 616 [1946]."); *Lero v. State Farm Fire and Cas. Co.*, 359 S.W.3d 74, 81 (Mo. App. 2011) ("[E]stoppel 'may not be employed to create coverage where it otherwise did not exist.' [Citation omitted.] 'This rule is grounded in the idea that "estoppel and waiver do not themselves give a cause of action, and that the purpose of estoppel is to preserve rights previously acquired but not to create new ones."' [Citations omitted.]"); *State Farm v. Zumwalt*, 825 S.W.2d 906, 910 (Mo. App. 1992) ("[C]overage which is excluded from an insurance contract will not be found to include that exclusion upon the basis of waiver for failure to timely assert the defense. [Citation omitted.] An insurer is not required to provide coverage where the effect would be that of providing coverage where none exists under the policy's terms."); *State Farm Mut. Auto. v. Hartford Acc. & Ind.*, 646 S.W.2d 379, 381 (Mo. App. 1983) ("In *Martinelli v. Security Insurance Co. of New Haven*, 490 S.W.2d 427, 434 [Mo. App. 1972], an exclusion of business pursuit coverage in a homeowner's policy was held not waived, and the insurer was not estopped to assert it, because, 'The principles of estoppel cannot be used to protect the insured against certain risks which are expressly excluded.'"); Annot., 1 A.L.R.3d 1139.

While Johnson fails to address this well-established rule, he essentially attempts to avoid this precedent by repeatedly relying on a Missouri Court of Appeals' decision in *Advantage Bldgs. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16 (Mo. App. 2014). *Advantage Bldgs.* is an estoppel case. In this case, the appeals court found the insurer was

estopped from denying liability due to noncoverage and that it had violated its duty to act in good faith to protect the interests of its insured. A detailed discussion of this case is necessary to address Johnson's argument on appeal.

In *Advantage Bldgs.*, Alsation Land Company, Vallejo, LLC (Alsation) filed a lawsuit against Advantage Buildings & Exteriors, Inc. (Advantage) for breach of warranty, negligence, and property damage due to construction defects in a building for which Advantage supplied the exterior wall panels. Advantage notified its insurer, Mid-Continent Casualty Company (Mid-Continent) of the lawsuit because Advantage held a Commercial General Liability (CGL) insurance policy, with a $1,000,000 policy limit, and a $2,000,000 umbrella policy.

Mid-Continent responded by sending Advantage a letter, which indicated that while the company would investigate the claim and perform a coverage analysis, it was reserving its right to disclaim its duty to defend or indemnify. Mid-Continent also informed Advantage that it would "promptly advise" it of the outcome of its coverage analysis. 449 S.W.3d at 20. Almost 1 month later, Mid-Continent sent Advantage a second letter stating that while it was still reserving its rights, it had hired an attorney, Eric Swanson, to defend Advantage in the litigation, and "'[i]f other facts come to our attention, we will promptly inform you of them.'" 449 S.W.3d at 20. Both letters "generally discussed the nature of the underlying lawsuit and set forth various provisions of Advantage's general liability policy[, but *n*]*either letter clearly and unambiguously explained how those provisions were relevant to Advantage's position or how they potentially created coverage issues*." (Emphasis added.) 449 S.W.3d at 23.

Swanson subsequently recognized that Advantage was "exposed to millions of dollars in damages" and advised Mid-Continent that it should settle the claims because "'Alsation [would] ultimately prevail at trial.'" 449 S.W.3d at 20. Nevertheless, Mid-Continent concluded that its indemnification obligation under Advantage's policies was

17

limited to about $53,000 in damages to Alsation's building. Inexplicably, Mid-Continent neglected to inform Advantage of this determination. In fact, Advantage did not have contact with Mid-Continent for more than a year. As a result, Advantage hired its own counsel, Phil Richards, who sent a written demand letter to Mid-Continent to settle Alsation's claims. But Mid-Continent did not respond.

On July 10, 2010—about 2 years after the lawsuit was filed—all of the parties involved in the underlying litigation participated in a final mediation. While Mid-Continent attended the mediation on Advantage's behalf, it did not inform Advantage until 5 days after the mediation that it had concluded 9 months earlier that Advantage should attend the mediation because it faced "substantial 'uncovered exposure.'" 449 S.W.3d at 20. Moreover, Mid-Continent only gave Swanson the authority to offer $50,000 on behalf of Advantage, resulting in the mediator asking Mid-Continent to leave the mediation due to its refusal to attempt to settle the litigation. Alsation ultimately settled with the other defendants, leaving Advantage as the only defendant.

Shortly after the mediation, Richards again demanded that Mid-Continent settle Alsation's claims within the policy limits and Alsation's attorney made two settlement offers for amounts within the limits of Advantage's insurance policies. Mid-Continent ignored the settlement offers. Instead, it filed a declaratory judgment action against Advantage, seeking a declaration that it had no obligation to defend or indemnify the company. Then, the following day, Mid-Continent informed Richards—*4 days prior to the scheduled trial and nearly 2 years after promising Advantage that it would "'promptly' advise Advantage about its coverage analysis*"—of its determination that Advantage's policies did not cover most of Alsation's $3,000,000 claim. (Emphasis added.) 449 S.W.3d at 21.

Advantage subsequently entered into an agreement with Alsation under which Advantage agreed to (1) pay Alsation $500, (2) sue Mid-Continent for bad faith, and (3)

18

give Alsation any proceeds in exchange for Alsation's agreement to (1) not execute on any judgment against Advantage, (2) fund Advantage's claims against Mid-Continent, and (3) accept whatever damages Advantage recovered in full satisfaction of its claim.

Following a bench trial, the district court concluded that Advantage was negligent and awarded Alsation $4,604,000 in damages, less the amounts paid by the other defendants. Subsequently, Mid-Continent amended its declaratory judgment petition to include an allegation that it was not liable for the judgment, and Advantage filed a counterclaim alleging bad-faith failure to settle. Mid-Continent then moved for summary judgment on its declaratory judgment action and Advantage's counterclaim.

The district court granted Mid-Continent's motion that it was not liable for the Alsation judgment, finding that under Oklahoma law (which governed the coverage issue) Advantage's policy did not cover Alsation's claims. But the court found that it was not appropriate to grant summary judgment on the counterclaim because "'bad faith is generally a fact question,'" and the court denied Mid-Continent's request to inform the jury that the policies provided no coverage for Alsation's claims. 449 S.W.3d at 21. A jury subsequently found in favor of Advantage on its bad-faith claim, and it awarded Advantage $3,000,000 in compensatory damages and $2,000,000 in punitive damages.

On appeal, the Missouri Court of Appeals rejected Mid-Continent's contention that there was no basis for Advantage's bad-faith claim because the insurer had agreed to defend Advantage under a proper reservation of rights, and it was ultimately determined that there was no insurance coverage. On the contrary, the appeals court found that Mid-Continent was estopped from denying coverage for Alsation's claims because Mid-Continent "failed to effect a proper reservation of rights" and "[d]efending an action with knowledge of non-coverage under a policy of liability insurance without a *proper and effective* reservation of rights in place will preclude the insurer from later denying liability due to non-coverage." 449 S.W.3d at 24.

19

The appeals court explained that under Missouri law, "'[a]n insurance company has a duty to defend an insured when the insured is exposed to *potential* liability to pay based on the facts known at the outset of the case' [Citation omitted.]" 449 S.W.3d at 22. Upon proper notice to the insured, however, an insurer may defend the action under a reservation of rights, and if the "'*fully-notified* insured'" accepts the insurer's defense under such circumstances, the insurer's offer will not be considered a denial of coverage. 449 S.W.3d at 22. The appeals court continued:

"However, the insurer owes the insured a duty to assert a *proper* reservation of rights that is timely and clear and that fully informs the insured of its position. [Citations omitted.] The insurer must conduct any investigation and analysis of the claim 'with reasonable diligence' and must 'promptly notif[y] the insured of its position once the process is complete.' [Citation omitted.] A liability insurer that assumes the defense of its insured should promptly advise the insured of any grounds on which it appears that all or any part of that asserted liability might not be covered. [Citation omitted.] The reservation of rights letter should be 'specific and unambiguous,' should 'fully explain the insurer's position . . . with respect to the coverage issue,' and 'must avoid any confusion.' [Citation omitted.]" 449 S.W.3d at 22-23.

The appeals court found that Mid-Continent did not properly reserve its right to disclaim coverage when it agreed to defend Advantage because the "'reservation of rights' notification was not timely or clear, *nor did it fully and unambiguously inform the insured of the insurance company's position as to coverage*." (Emphasis added.) 449 S.W.3d at 24. Additionally, the appeals court found that Mid-Continent violated its duty to act in good faith by "assum[ing] control of the negotiations, settlement, and legal proceedings," and refusing to settle for $800,000 when it knew that Advantage "was exposed to millions of dollars in liability with little or no insurance coverage and did not advise Advantage of this precarious situation until the eve of trial when Advantage could not properly prepare to defend itself." 449 S.W.3d at 25.

20

Returning to the present case on appeal, Mid-Century and Farmers assert that *Advantage Bldgs.* is inapplicable and clearly distinguishable from the facts of this case. We agree.

First, the decision in *Advantage Bldgs.* was based on events that occurred *after* a lawsuit was filed in the underlying litigation. Unlike *Advantage Bldgs.*, Johnson focuses his waiver and estoppel claims upon events which transpired *before* the plaintiffs even filed their underlying lawsuit.

Second, in *Advantage Bldgs.* the insurer assumed complete control over its insured's defense for 2 years *without an effective and complete reservation of rights*. In contrast, Mid-Century and Farmers agreed to defend Johnson pursuant to a lengthy and detailed reservation of rights letter only 8 weeks after they received notice of the filing of the underlying lawsuit. Although Johnson initially challenged Farmers' reservation of rights letter because it listed Truck Insurance Exchange as the provider of his umbrella policy, Johnson did not attack the content of Mid-Century and Farmers' reservation of rights letter for not informing him of the companies' position regarding coverage, which was the critical factor in the *Advantage Bldgs.* decision.

As explained in *Smith v. Maryland Casualty Company*, ___ S.W.3d ___, ___, 2015 WL 302151, at *5 (Mo. App. 2015), "[t]he conclusion in *Advantage Bldgs.* was based on a theory of estoppel[,] . . . a distinct theory which . . . requires a representation by the insurance company." In *Advantage Bldgs.*, Mid-Continent made a representation that it would defend Advantage without properly preserving its right to disclaim coverage. As a consequence, Advantage relied on Mid-Continent's representation to its significant detriment. In the present case, however, Mid-Century and Farmers made no such representation which was detrimentally relied upon by Johnson.

21

Third, in *Advantage Bldgs.* the insurer's conduct was egregious. Unlike the present case, the insurer in *Advantage Bldgs.* exposed his insured to millions of dollars in liability with full knowledge that coverage was limited or nonexistent yet without informing the insured of this important circumstance until 2 years after promising to advise the insured about its coverage analysis and 4 days prior to trial. There is simply no similarity in the insurers' conduct in these two cases.

In summary, we do not find the precedent in *Advantage Bldgs.* applicable to the facts and circumstances of the case on appeal. The jury found that the allegations of harm made against Johnson were reasonably foreseeable from his conduct, and based upon this finding, the district court determined as a matter of law that neither of Johnson's insurance policies afforded him coverage, as his alleged conduct fell within the intentional acts exclusion, *i.e.*, the loss resulted "from any **occurrence** caused by an intentional act of any **insured** where the results are reasonably foreseeable." Despite Johnson's assertion to the contrary, the doctrines of waiver and estoppel were unavailable to create insurance coverage where such coverage did not otherwise exist.

INSTRUCTIONS AND VERDICT FORM

Finally, as discussed earlier, in the district court Johnson did not preserve his instructional objections that he now raises and briefs on appeal. This failure is consequential because a party may not claim error for the district court's giving or failing to give a jury instruction unless the party objects before the jury retires, stating distinctly the matter to which the party objects and the grounds for the objection. *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). Nevertheless, a party's failure to object does not preclude that party from obtaining review; instead, in these circumstances, the appellate court determines whether the challenged instruction or the failure to give an instruction was clearly erroneous.

22

Appellate courts utilize a two-step process when analyzing whether an instruction was clearly erroneous. First, the court must consider whether there was any error at all by considering whether the instruction at issue was both legally and factually appropriate, employing an unlimited review of the entire record. Second, if the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014).

In Johnson's issue statement relating to his third issue on appeal, he posits: "Jury instructions nos. 7, 11, 12, 13, 14, 15, 16, and the verdict form misinterpreted Missouri law." However, in his brief Johnson does not specifically argue what error occurred as a result of submitting jury Instruction nos. 12, 15, and 16. An issue not briefed by the appellant is deemed waived and abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Johnson objects to Instruction No. 7, "The Insurance Companies' Claims under the Policies," because he contends "whether a policy covers an insured—is not an element of a bad faith failure to settle [a] claim." Johnson cites *Advantage Bldgs.* in support. But as discussed earlier, unlike *Advantage Bldgs.*, where the insurer "failed to effect a proper reservation of rights," *Advantage Bldgs.*, 449 S.W.3d at 24, in the present case the insurers did effect a full and complete reservation of rights. Johnson has not shown error.

With regard to Instruction No. 11, which dealt with breach of contract, Johnson contends "the carriers breached their duties and that Mr. Johnson was excused from performing any further duties under the contract." Johnson appears to contend this instruction should not have been given to the jury but the district court should have decided this contractual issue as a matter of law. But Johnson had the opportunity to raise this issue on summary judgment and in his motions for judgment as a matter of law. He failed to do so. On appeal, Johnson cites no precedent, and his argument is cursory. This

23

argument is waived or abandoned and is not meritorious. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013) (point incidentally raised); *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013) (failure to support a point with pertinent authority).

With regard to Instruction No. 13, Johnson complains, "Instruction no. 13 and question no. 2 on the verdict form also erroneously set forth Missouri law regarding expected and intended injuries as they apply to insurance cases." But Instruction No. 13 informed the jury regarding when an injury is expected or intended which directly related to Question No. 1 on the verdict form: "With respect to the claims made against Jeremiah Johnson by his former employees, do you find that Mr. Johnson *intended or expected that harm* would result from the alleged conduct?" The jury answered, "No," to this question which was a factual finding favorable to Johnson. As a result, Johnson has not shown reversible error.

Finally, Johnson claims that the "most serious issue [with respect to the jury instructions] concerned the verdict form" because the verdict form "did not allow the jury to consider [his] claims of bad faith failure to settle, breach of contract, and vexatious refusal if it found that the policy exclusions applied." As the verdict form was structured by the district court, the jury was first asked two questions to determine if there was a factual basis established to support the two policy exclusions asserted by the insurers. The jury answered Question No. 2 by finding that the allegations of harm made against Mr. Johnson were reasonably foreseeable from his conduct. Upon this finding, the jury was instructed to advise if its answer to the question "was by ten or more jurors." Based on the factual findings, the district court ordered judgment in favor of Mid-Century and Farmers and against Johnson on the insurers' claims for declaratory judgment. In particular, the district court found "that coverage for the claims asserted against Jeremiah Johnson in the underlying lawsuits is precluded by the intentional acts exclusion

24

contained within the [insurers'] policies because the results of the alleged harm were reasonably foreseeable."

Johnson complains that the verdict form did not allow the jury to consider his counterclaims if it found that the policy exclusions applied. Once again, Johnson cites *Advantage Bldgs.* and states: "Missouri law makes it clear that the jury should not have been allowed to consider the exclusions asserted by the carriers." As discussed earlier, *Advantage Bldgs.* is not applicable given the facts and circumstances of this case on appeal. We find no error.

As noted earlier, Johnson did not brief our standard of review as it relates to instructional matters. Perhaps as a consequence, he does not argue whether any of the errors he alleged were "clear error[s]" under Kansas law. *Clay*, 300 Kan. at 408; K.S.A. 2015 Supp. 22-3414(3). It is Johnson's burden to prove clear error given the procedural posture of this appeal, and his failure to meet this burden precludes a finding of reversible error on appeal. 300 Kan. at 408. Nevertheless, based on our review of the challenged jury instructions and jury verdict form we are persuaded there was no instructional error. Additionally, assuming there was error, we are firmly convinced the error was not clearly erroneous. See 300 Kan. at 408.

Affirmed.